Smith *v.* Stevens.

In this opinion GRANGER, J., concurred.

————————⟨•••⟩————————

ASA SMITH AND ANOTHER *vs.* WILLIAM B. STEVENS AND OTHERS.

*A* mortgaged certain land to *B* to secure sundry negotiable notes amounting to $25,000. *B* negotiated for a valuable consideration $5,000 of these notes to *D*, and afterwards negotiated the remaining $20,000, with an assignment of four fifths of the mortgage, to *E*. *E* required of *B* as a condition of his taking the $20,000 that he should release to the mortgagors such portion of the mortgage as covered the remaining $5,000. His object was to increase the security of the $20,000, and he did not know at the time that the $5,000 was held by *D*. *B*, without the knowledge of the mortgagors, placed on record a release of the mortgage as to the $5,000. *D*, who was not present at the negotiation, knew of *B*'s intent to make this release and of *E*'s requiring it before taking the $20,000, and objected to its being made, but gave no notice of his claim to *E*, and took no further steps in the matter. *E*, supposing that the lien of the $5,000 was discharged, took the $20,000. The security proved insufficient for the whole. Held—

1.   That upon the delivery of the $5,000 notes to *D* a one fifth interest in the mortgage security passed to him by operation of law.

2.   That this title being complete could not be affected by any transaction between *E* and *B*, to which *D* did not consent.

3.  Whether *D*, by his neglect to notify *E* of his claim to the benefit of the mortgage as holder of the $5,000, was estopped as against him from claiming that benefit:—*Quære.*
4.  That if he would otherwise have been so estopped, yet that *E* had been guilty of negligence in not making inquiry as to the facts and especially as to whether *B* had negotiated the $5,000 notes, which must be regarded as the cause of his loss.

BILL IN EQUITY to compel the respondents to release to the petitioners an interest held by the former in certain real estate; brought to the Superior Court in Hartford County, and heard before *Beardsley, J.* The following facts were found by the court:—

The premises in question, situated in the city of Hartford, were mortgaged by the respondents Stevens, Ross and Leavitt, to Albert Day, on the 31st of December, 1875, to secure the sum of $25,000, in nine promissory notes made by them, each bearing date January 1st, 1876, and payable to the order of the makers and by them endorsed—one for $5,000 and one for $1,250, both payable one year from date, one for $5,000 and one for $1,250, payable two years from date, one for $5,000 and one for $1,250, payable three years from date, one for $4,000 and one for $1,250, papable four years from date, and one for $1,000 payable five years from date. Immediately after the delivery of the notes and mortgage Day for a good consideration delivered to the respondent Stevens two of the notes, namely, the one for $4,000, payable four years from date, and the one for $1,000, payable five years from date. Stevens or his assignee have ever since held these notes as valid and existing notes and they have never been paid. The mortgage was at once put upon record.

On the 4th day of April, 1876, Stevens, Ross and Leavitt conveyed the equity of redemption in the premises to the Hartford Lumber Company, by a deed by which the latter assumed and agreed to pay the mortgage debt.

On the 17th of April, 1876, Day, without their procurement or knowledge, executed and put upon record a quit-claim deed to Stevens, Ross and Leavitt of so much of the mortgage lien as secured the five thousand dollars, intend-

ing that it should appear by the town records that he had fully discharged and released the same, not knowing that in the mean time the legal title had been conveyed to the Hartford Lumber Company. Day thereupon, on the same day, assigned the debt of $20,000 and the notes evidencing the same to Rowland Swift as trustee for certain of his creditors, for a good consideration, and assigned to him a four fifth interest in the mortgage. Swift knew of the release of so much of the mortgage as secured the $5,000, and supposed the same to be valid and effectual, but did not know that the notes for $5,000 were outstanding and valid, and took the mortgage and notes in good faith, supposing that the $20,000 was all the debt then secured by the mortgage. Swift made it a condition of taking the notes and mortgage that so much of the mortgage as secured the $5,000 should be released.

The interest in the mortgage conveyed by Day to Swift was thus described in the deed: "Such a proportionate interest in said mortgage and the real estate thereby conveyed as the above described notes, amounting to the principal sum of twenty thousand dollars, bear to the entire indebtedness secured by and described in said mortgage."

Smith & Bogert, co-partners, afterwards purchased of Swift the notes for $20,000, paying him therefor, and took an assignment of the mortgage and the notes. Bogert was informed before the purchase that Stevens held the $5,000 notes, and that he claimed that they were valid in his hands and were secured by the mortgage; but Smith had no knowledge of these facts. Smith & Bogert thereupon, on the 25th of May, 1877, purchased of the assignee in bankruptcy of the Hartford Lumber Company, the equity of redemption in the premises; but they did not intend thereby to merge the mortgage, but to hold the same as an existing lien.

The Connecticut River Lumber Company was afterwards incorporated, and Smith & Bogert conveyed to it the mortgage notes and mortgage, and also the equity of redemption. The corporation paid them therefor a valuable considera-

tion; Asa Smith, the petitioner, was president of the corporation.

At the time of the execution of the release as to the $5,000 notes by Day, Stevens knew of it and objected to it, but did not afterwards take any steps to annul the deed nor any action in relation thereto, and never notified Swift of his claims under the mortgage, although he knew that the release was made for the purpose of having Swift purchase the notes and mortgage. Stevens afterwards sold and conveyed the notes for $5,000 to Lewis V. Durand, who took the same in good faith as security for a debt then due to him from Stevens, and now holds the same.

Upon these facts the court dismissed the petition. The petitioners brought the record before this court by a motion in error.

*C. E. Perkins,* for the plaintiffs in error.

1. The petitioners stand in the position of Swift, and as between him and Stevens, Ross & Leavitt, he would be entitled to have the legal title in them conveyed to him, as so long as it exists in them it is a cloud on his title. While a purchaser of land, the title of which is clear on the record, is affected to a certain extent by notice of equitable claims of other persons, yet it is equally well settled that a purchaser with notice who buys from one without notice, is not affected by his own knowledge, but stands in the place of his grantor. 1 Story Eq. Jur., § 409; Kerr on Frauds, 316.; Bump on Fraud. Convey., 481.

2. The question then arises, what were Swift's rights; and without considering them all, I submit that one of them was to hold *the whole* of the mortgaged premises as security for the $20,000 of notes which he held. Day held a mortgage to secure $25,000 of notes. He wanted to sell to Swift $20,000 of them. Swift says the security is not sufficient for $25,000, but if you will release the extra $5,000, so that the whole mortgage is security for only $20,000, I will buy the $20,000. Day then executes and puts on record a release which says—"meaning and intend-

ing hereby *to release and discharge* such a proportionate part of said mortgage lien as the said above described notes amounting to the principal sum of $5,000 bear to the entire indebtedness secured by and described in said mortgage." There can be no doubt but that a mortgagee can release all or any part of the mortgage security, and that such release will be valid as to all *bonâ fide* purchasers of the property. This was held in *Ely* v. *Stannard*, 46 Conn., 128, where the release was fraudulent as against Ely. If Stevens desired to prevent this, he should have taken from Day a transfer of a part interest in the mortgage, and put it on record; not doing this he exposed innocent third persons to purchasing the property and thereby losing their money.

3. But the defendants claim that because the quitclaim deed was given to the *mortgagors after they had conveyed* to the Hartford Lumber Company, the release was entirely ineffectual. But the release has been made, and is on the records. The precise form of it is not material. If Day had executed a release and put it on the records without its being in the form of a quitclaim deed, and only specifying the mortgage and saying that he released so much of it, it would have been sufficient, and there would have been no need of this suit. The only diffculty is that in addition he made a quitclaim deed to these three persons by mistake, supposing that they still had the title. Thus the title, which passed by the quitclaim, (*Ely* v. *Stannard*, 44 Conn., 528,) became vested in the mortgagors. Our title is not clear on the records in consequence of this mistake. Here Day and Swift both intended to have this part of the mortgage released, and supposed that the mortgagors still held the property and were the proper persons to whom the release should be executed. If the notes for $5,000 had been destroyed can there be any question but that the release would be sufficient, and that Stevens, Ross & Leavitt would hold the legal title only for the benefit of those really interested in the property? But, so far as Swift was concerned, the notes were extinguished. He, in good faith,

made it a condition of buying that those notes should not be a lien on the property.

4. Stevens is clearly estopped from asserting any claim to the benefit of the mortgage. He knew that Swift was purchasing these $20,000 notes and made it a condition that the $5,000 should be released, and that he paid his money on the supposition that the $5,000 was discharged; and yet he stood by and saw it done without notifying Swift of his claim. This makes a clear case as against him in Swift's favor. It would be a gross outrage if he could now turn round and say, "I knew you were paying your money for those notes on the supposition that the $5,000 was discharged. I stood by till you had parted with your money, and now I come forward and claim that they are not discharged." *Roe* v. *Jerome*, 18 Conn., 153; *Mitchell* v. *Leavitt*, 30 id., 587; 2 Jones on Mortgages, § 986. In *Gregory* v. *Savage*, 32 Conn., 250, the court say, in a similar case, speaking of assignees of a debt secured by mortgage: "They could have protected their interests by deeds which would have placed it beyond the power of Mandeville to commit a fraud; and if they relied at all upon the mortgage security we think their only safe course was so to do." And again: "And of the two innocent parties, one of whom must suffer, it would seem to work the less injustice that the loss should fall upon him who, by his omission to perfect his assignment, has left it in the power of others to commit the fraud." In *Waters* v. *Waters*, 20 Iowa, 363, just such a release appears to have been executed, and it was held to be sufficient as to an innocent purchaser.

*L. E. Stanton* and *C. J. Cole*, for the defendants in error.

GRANGER, J. (After stating the facts.) The case turns wholly upon the effect of the release given by Day of the mortgage security so far as it covered the $5,000 of the mortgage debt held at the time by the respondent Stevens. We need not consider the effect of the mistake made by Day in releasing to Stevens, Ross & Leavitt, the original mort-

gagors, instead of to the Hartford Lumber Company, who then owned the equity of. redemption; for if the release would otherwise have been good a court of equity would correct that mistake. The rights of the petitioners as the holders of $20,000 of the mortgage debt under a transfer from Swift are the same that his were, and we may consider the case as standing between Swift and Stevens. Thus regarding it let us see what were their rights and how they were affected by the release made by Day.

The mortgage was given by Stevens, Ross & Leavitt to Day to secure sundry notes made by them, amounting in the aggregate to $25,000. These notes were payable to their own order and were by them endorsed and delivered with the mortgage to Day. Immediately after the delivery of the notes and mortgage Day delivered two of the notes, amounting to $5,000, for a valuable consideration to Stevens, who has ever since held them. A transfer of a mortgage debt of course carries with it an equitable title to the mortgage security, and where a part of such a debt is assigned it carries with it a proportionate part of the security. *Keys* v. *Wood*, 21 Verm., 332. Stevens thus became the owner of these notes and of one fifth of the mortgage security. His title was complete.

Two months and a half later Swift purchased for a valuable consideration the remaining $20,000 of the mortgage notes. He took them in trust for certain purposes, but this does not affect the case. He may be regarded as standing for the purpose of the present question as if he had been an ordinary purchaser. Now what did he take, so far as the security is concerned? The law gave him an equitable right to four fifths of the security. But here was an express conveyance of the mortgage interest, and it was of precisely the same extent with the interest that would have passed to him by act of law without a conveyance. The interest conveyed is thus described in the instrument:— "Such a proportionate interest in said mortgage and the real estate thereby conveyed as the above described notes, amounting to the principal sum of twenty thousand dollars,

bear to the entire indebtedness secured by and described in said mortgage." Here there is no conflict between his rights and those of Stevens, nor any foundation for one. The right of Stevens to his one fifth, and of Swift to his four fifths of the mortgage, were each complete and the two rights could stand together.

But now comes in the first incident of the case that raises any question. Swift required of Day, as a condition of his taking the $20,000 of notes, that he should release the mortgage so far as it covered the other $5,000 of notes. His object was to increase the security for the notes which he held by giving them the benefit of the whole of the security and not of four fifths of it merely. There was nothing in the fact that his conveyance of the interest in the mortgage was limited to four fifths of it that necessarily prevented his getting the benefit of the entire mortgage if the other $5,000 of notes should be put out of the way. The reduction of a mortgage debt always increases the security for the remainder. If the express conveyance could not be enlarged, yet the law itself would enlarge the right of the unpaid $20,000 of notes to the benefit of the mortgage. The object aimed at was therefore one that was lawful in itself and easy of accomplishment if there were no rights of other parties to be affected. But here the rights of Stevens as holder of the $5,000 of notes stood in the way, and could be got out of the way only by the application of an equitable estoppel growing out of his conduct in the matter. Let us now look at this conduct.

It is found that "at the time of the execution of the release by Day, Stevens knew of it and objected to it, but did not afterwards take any steps to annul the deed nor any action in relation thereto, and never notified Swift of his claims under the mortgage, although he knew that the release was made for the purpose of having Swift purchase the notes and mortgage." And the petitioners claim that in thus standing by and seeing Swift purchase the notes and pay for them, in the belief that there was no outstanding interest in any third person in the $5,000 notes, he has in

equity waived whatever rights he had in the security as against Swift, and is now equitably estopped from setting up those rights.

If Stevens had been present during the negotiation between Day and Swift, as it does not appear that he was, and had stood by in silence while Swift was purchasing the notes and mortgage in the belief that the lien of the $5,000 notes was discharged, it would seem as if, upon well settled rules, he ought not now to be allowed to set up his claim to the lien to the injury of Swift. His rights, though not otherwise affected, would be postponed to those of Swift. It is not clear however that in his absence from the place of the negotiation, and with merely a knowledge that Day was about to make the release; he was bound to do more than object to his making it. He of course had no power except by an injunction to stop him from doing it. It can hardly be claimed that he was bound to resort to that measure. His simple remedy was to notify Swift, and if that had been done the release would have been harmless; so far as he himself was concerned. This course as a matter of common fairness we think he ought to have taken, and we are not prepared to say that equity would nôt have required it of him.

But without deciding precisely what effect should be given in equity to Stevens's conduct, we think that Swift himself was guilty of a want of care that must be regarded as equally, if not in a greater degree, the cause of his loss. He must be regarded as cognizant of all the incidents of the transaction that by reasonable inquiry he could have ascertained. Among these was the fact that the release was made and put upon record by Day wholly without the knowledge of the releasees, Stevens, Ross & Leavitt, except so far as Stevens had known of his purpose to make it, as of course he must have done in objecting to it. Indeed it does not appear that Stevens knew, until some time after, that Day had actually, in spite of his objection, made the release. The release having thus been put upon record without the knowledge of the releasees was of course inope-

rative until accepted by them. It does not appear that they ever did accept it. The objection to it made by Stevens would go to show that he, as one of the releasees, would never have accepted it. His interest was directly the other way, while the other releasees, having parted with all their interest in the equity of redemption, had no interest whatever in accepting it. Indeed their interest was also the other way. If the $5,000 notes were outstanding they might have them to pay, being their own notes, and it was for their interest that they should be paid out of the mortgaged property, in which they had no longer an interest, rather than out of their own means.

It is to be observed that Swift took the $20,000 notes immediately on the execution and recording of the release, without waiting to ascertain whether it was accepted by the releasees, while he must have known that their interest might be against the acceptance and at the most could not be in favor of it. The mischief then was really done before the point was reached where the conduct of Stevens could be regarded as open to criticism. Again, Swift could have ascertained the facts with regard to the outstanding $5,000 notes by a little inquiry easily made. He seems to have taken it for granted that those notes still remained in Day's hands and under his control. But if he had required an explicit statement from Day on the subject he would probably have been correctly informed by him. It does not appear that inquiry was made. If Day still owned the notes he could have produced them, and his failure to produce them upon inquiry made would have been abundant notice to Swift that the notes had been negotiated to a third party, who of course was entitled to the benefit of the mortgage. Indeed the defeasance of the mortgage, which he must have received into his hands from Day, showed that the $5,000 was in two notes, one for $4,000 payable in four years from date and one for $1,000 payable five years from date. There was therefore no room for the presumption, hardly for the possibility, that they had been paid. The other notes, falling due earlier, would have been paid

if any had been. Indeed the requirement that the mortgage should be discharged as to these notes showed that Swift supposed they had not been paid. And the mortgage showed too that the notes were payable to *the order of the makers*, making the indorsee who should hold them as much within the very terms of the mortgage as the original mortgagee. In these circumstances for Swift to take the $20,000 notes without inquiring after the $5,000 notes, was a want of care on his part that far exceeds the apparent want of fair dealing on the part of Stevens. We are clear therefore that he can not stand for a moment on the claim that he has been injured by the unfair conduct of Stevens, but must look upon his loss as brought upon him by his own carelessness.

We think the court below committed no error in dismissing the bill.

In this opinion the other judges concurred.