THOMAS B. WILCOX *vs.* CHARLES E. WOODRUFF AND OTHERS.

Hartford Dist., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

The plaintiff, under a contract with the owners of a city lot of about three quarters of an acre, furnished lumber for three dwelling houses that the owners were building on the lot, keeping no separate account with each building, and recording a lien for one general claim on all the houses and the entire lot. Each building with its share of the land was mortgaged by itself in the course of its construction, and when completed they were all rented separately, although remaining under one management. There had been from the first no intention to use

them in connection or for any common purpose. The land mortgaged with each house was all that was necessary for its use. Held that the lien was not a valid one.

It is essential to the validity of a single lien upon separate buildings, that they shall be erected for some general and connected use.

Argued October 9th—decided December 19th, 1891.

Suit for the foreclosure of a builders' lien; brought to the Superior Court in Hartford County, and heard before *J. M. Hall, J.* A large number of mortgagees and lienors were made parties defendant, and filed answers setting up their claims upon the property. The court found the facts and granted the plaintiffs and other lienors a decree of foreclosure, and two mortgagees, and the trustee in insolvency of the defendant Woodruff, appealed. The case is fully stated in the opinion.

*H. M. Holcomb, A. F. Eggleston* and *John Coats*, for different appellants.

*F. L. Hungerford* and *J. C. Gallagher*, for different appellees.

FENN, J. This is an action to foreclose a mechanic's lien. E. R. Bishop & Co. purchased a lot of land on which they proposed to erect three dwelling houses to rent. The houses were erected, the. plaintiff, under an agreement, furnishing materials for that purpose. In a suit to foreclose his lien, others who claimed liens on the premises were made defendants. In their answers they also claimed foreclosures of their respective liens. The trial court rendered judgment for the lienors and the other defendants appealed.

In each case the lienor filed but one lien, covering the entire lot of land, about three quarters of an acre, for supplies furnished, labor performed, etc., in the construction of the three dwelling houses. The first and principal question in

---

\* The opinion in this case was not finally filed with the reporter for publication until April, 1892, in consequence of an application for a re-argument of the case. R.

the case is, whether there should not have been separate liens for each dwelling house. The material facts bearing upon this question are as follows :—

The plaintiff, Wilcox, is a lumber merchant. His claim is for lumber which entered into the construction of the three houses. C. E. Woodruff, one of the firm of E. R. Bishop & Co., stated to him that he and his associates had purchased the lot, that they had formed a syndicate, and that they were going to erect on the lot three dwelling houses to rent. He wanted prices for the lumber for the three houses, and sought low prices because of the amount of the materials required. An agreement was made pursuant to which Wilcox furnished the lumber for the houses. He did not keep a separate account of the lumber which entered into the construction of each house, and the same cannot now be ascertained. The dwelling houses were intended to be, and were in fact, under one management, although they were capable of separation, and were separated before they were completed for the purpose of raising money thereon. One of them fronted on Camp street, and the other two on Grand street, and all were upon different grades.

The liens of the other claimants rest upon the same or similar facts. Each one claimed one lien only, for one sum, including the price of all materials furnished and labor performed, and filed but one certificate of lien, covering all the land and all the houses. Did the Superior Court commit error in holding that the several liens were valid ?

Had there been but one dwelling house, and the other buildings had been a barn and other out-buildings connected therewith, all forming one homestead, the cases of *Bank of Charleston* v. *Curtiss*, 18 Conn., 342, and *Lindsay* v. *Gunning*, 59 id., 296, would have been decisive of this case. Had the three dwelling houses been built together in one block, so as to have formed practically but one building, the case of *Brabazon* v. *Allen*, 41 Conn., 361, would have controlled it. Do the facts, as they are, bring this case within the principle of those three cases ? Here was a unity of

title, unity of contract, and unity of performance. Separate items for the different houses were not required nor suggested, and no intimation appears to have been made of a contemplated division of the property for any purpose until the buildings were so far completed as to render it feasible to separate them for the purpose of raising money thereon by mortgages. At that time it was impossible to charge each house with the materials that entered into its construction. Hence, if these liens are invalid, a lien was then impossible.

But we are of opinion that none of these considerations can avail. Nor, in our judgment, is there anything in the cases cited which supports the contention of the lienors. On the contrary, other cases within this jurisdiction are decisive against it. An examination of our statute, and of the cases in which it has received judicial construction, will, we think, clearly demonstrate this. The statute, at present constituting section 3018 of the General Statutes of 1888, creates a lien upon every building in the construction or repairs of which, or of any of its appurtenances, the claim arose. It provides that such claim shall be a lien on the land on which the building may stand, the building and its appurtenances. It follows therefore that in order to be entitled to claim a lien, pursuant to the statute, on any building, for work done upon any other building, the latter must be either an appurtenance of the former, or land upon which it stands, as these terms are construed. And the same principle must apply when a lien is claimed upon several buildings for work done generally upon all. Of course the lienor's rights are purely statutory, and in *Chapin* v. *Persse & Brooks Paper Works,* 30 Conn., 474, it is said that " this statute, as it gives peculiar privileges to certain creditors, contrary to the general policy of our law, which favors an equal distribution of the effects of insolvents, should be construed with reasonable strictness." In that case a lumber dealer sold lumber for three paper mills belonging to the same owner, which were undergoing repairs, two upon one piece of land and a third upon a separate piece. The three mills were in fact used

together for the manufacture of paper in the different stages of the process, but two of the mills were so fitted with machinery that the whole process might have been carried on in either, and the other mill could easily have been supplied with machinery for that purpose. The dealer afterwards filed a certificate of his lien, describing the three mills together, and his lien as one lien upon the whole, and stating the whole amount due him as the amount of his lien. It was held that the certificate was void, both in respect to the description of the premises covered by the lien and in respect to the statement of the amount. The case cited differs from the present in two particulars. The mills stood upon *two* separate pieces of land and the petitioners were requested to keep an account of the respective materials so furnished to each of the mills, and the account was in fact thus kept with each mill separately. But neither of these elements was regarded as important by the court, which said:—
" Now the lien, under such a contract, if it indeed amounts to a lien, or is anything more than a contract for the sale of merchandise, the amount or quantity of which is to be determined by the amount wanted for certain purposes, must, as we think, be a separate and distinct lien *on each separate building* with its appurtenances, and was therefore in this case, not one lien on *three* buildings, but *three* liens, each for the amount of material that was delivered for the erection or repair of the particular mill upon which, in point of fact, it was put. * * * If such a course as was here attempted could be justified, then it would seem to follow that general contracts with builders to furnish materials for such houses as they might build within any limited time, or perhaps indefinitely, would bind all the buildings together for the materials furnished for all, *and the inconvenience and injury to persons who had separate claims for work or materials for each of the buildings separately would be intolerable.*"
In *Larkins et al.* v. *Blackman et al.*, 42 Conn., 291, a single lien was filed upon a claim for materials furnished, under separate contracts, for two dwelling houses, standing on adjoining lots and erected by the same builder, but one com-

menced about six weeks before the other. The lien was held invalid. The court says :—" The record does not show and it is impossible now to ascertain the amount furnished for each house. This is a fatal objection. The statute gives a lien upon each building and lot for materials furnished in the construction of that building only, and the certificate must state the amount so furnished as nearly as the same can be ascertained. This certificate states the aggregate amount for the two, but gives no information as to the amount furnished for each. This is not a compliance with the statute. It requires no argument to show that if the statute is not complied with the lien cannot be maintained. If any is needed it is readily found in the circumstances of this case ; a large proportion of the amount, nearly the whole perhaps, may have been expended on one house, and yet the other is made to bear one half the burden. * * * We are unable to distinguish this case in principle from that of *Chapin* v. *Persse & Brooks Paper Works,* 30 Conn., 461. Such distinction, however, is attempted, and our attention is called to the fact that the petitioner and the builders supposed that a lien existed, and that they and the other parties interested treated the property as subject to the lien. *But a mechanic's lien exists, not by contract, but by statute,* and no understanding or agreement of the parties will be of any avail when the requirements of the statute have not been complied with."

In *Brabazon* v. *Allen,* 41 Conn., 361, it was held that where a block of buildings comprising several dwellinghouses, separated one from another by a partition wall, is erected upon a single lot, and work is done upon it as a whole, under one entire contract, the builder's lien extends, as a single lien, to the whole block. That case differs from the present only in one feature, but unlike the features of difference in the other cases cited, the law does regard that feature as important and controlling. The court, by FOSTER, J., well says :—" As the right to liens is created by statute, the rights acquired, or whether any in a given case, must be determined by statute. We deem it wiser, therefore, to con-

fine our attention mainly to the terms and spirit of our statute and the decisions under it, rather than to be drawn aside to consider the decisions of other states whose statutes may be similar or dissimilar to ours." The court then states the claim of the plaintiff in error to be—" that here are five dwelling-houses, which, though contiguous to each other, are still in point of fact separate, distinct and independent." But the court says :—" We think that the plaintiffs in these cases were entitled to a lien on the *building* on which they had labored and for which they had furnished materials, and on the *whole building*, and the land on which it stands." The whole point of the case is that, whereas the plaintiff in error claimed that here were five buildings, within the intent and meaning of the statute, the court held that within such intent there was but one.

In the case before us, however, all that the plaintiff in error in the case cited claimed as a matter of construction, is found as a matter of fact. The court in its finding says: —" All of said dwelling-houses are separate and independent of each other in this respect, namely, that they are disconnected, the distance between No. 4, which was an old house upon the lot, and No. 3 being twelve feet; between No. 3 and No. 2, eleven and one half; and between No. 2 and No. 1, about fifty-two feet; and they are so constructed as to be adapted for separate and independent use ; and each of said dwelling-houses constitutes a single and independent structure." It is further found that each of the three houses has, since completion, been occupied by two separate families. So that in substance the contention of the plaintiff in error in *Brabazon* v. *Allen*, is similar to a claim, if made here, that each of these houses constitutes two buildings, or that there are six instead of three. It is true that in the opinion in that case a quotation is made from the opinion in the case of *Bank of Charleston* v. *Curtiss*, 18 Conn., 342, (to which we shall next allude,) in which the court says that the parties could not have contemplated a. division or separation of the cost, but this remark, appropriate in the connection in which used, in a case where all

the work was done upon a single principal building and such other subordinate buildings as can properly be held to be its appurtenances, where therefore a single lien is sufficient, can mislead no one who with the least care observes the context; and we have cited as fully as we have from *Larkins* v. *Blakeman* to show that this court has always held that this consideration has no legal significance under any other circumstances. In *Bank of Charleston* v. *Curtiss* a single lien was filed for work upon a dwelling house and barn and one acre of land. It was held that this lien was valid, and embraced not only the buildings, and the land covered by them, but also the land about the buildings, used with them, and necessary or reasonably convenient for their use, which in that case was held to be the entire lot. This case was followed in *Fitch* v. *Baker*, 23 Conn., 563, a case where a dwelling house, barn and privy were erected upon the same lot, and which illustrates, from another point of view, the doctrine that unity of contract is immaterial, since here were two separate contracts, one verbal and the other written. And very recently the principle upon which the case of *Bank of Charleston* v. *Curtiss* rests has received fresh confirmation and full illustration by the case of *Lindsay* v. *Gunning*, 59 Conn., 296. That principle is of course one of construction of the statute, and is that the outbuildings are dependencies of and appurtenances to the main building, and that the expression " land on which the same may stand," is to be construed, not literally and strictly, which would render the lien useless, but reasonably, and that, as so construed, the term embraces " the building lot or land about the buildings, used with them *and necessary or reasonably convenient for their use.*"

The full and clear exposition of this principle is condensed on a single page (348) of *Bank of Charleston* v. *Curtiss*, and *Lindsay* v. *Gunning* is only an application of that principle. The latter case is indeed said by this court (59 Conn., 320) to be " an extreme one." But it is so, not on account of any departure from such principle, but because, under the exceptional circumstances there existing, the court felt called

upon to give to such principle an extended practical appli-
cation.   It is indeed stated that there is some ambiguity in
the phrase quoted from the earlier case, and it is taken to
have been intended in its broadest sense and to mean "a
quantity of land suitable or proportioned to the buildings,
having regard to the purposes for which such land and build-
ings are ordinarily used;" or, as the reporter states it in
the head note—"The rule in determining what quantity
of land should go with farm buildings, in ascertaining the
builder's lien for constructing them, is to ascertain the quan-
tity of contiguous land that was intended should be used
with them, and to which they are needful or useful."   In
other words, to borrow the idea and adapt the language of
Judge PARDEE in *Marston* v. *Kenyon*, 44 Conn., 355, all
that was subjected to one use, as far as unity of use ex-
tended, embracing that and only that whose separation, by
reason of its natural or designed connection, would impair
the value of the part which remained for the purpose for
which it was constructed and thereby decrease its worth.

Applying these clear and reasonable rules of unity of
structure or of use to the case before us, (and no broader
rules can, as it seems to us, be applied as rules of construc-
tion of the statute, on which alone the lienor's claim must
depend—a statute which this court again says in *Lindsay* v.
*Gunning*, (p. 318,) in ascertaining whether a given case is
within it, "will be construed with reasonable strictness,")
it seems manifest that the claimed liens before us are not
within it.   Certainly, as we have already seen, there was no
unity of structure.   There was not one building but three.
Nor were any of these buildings, in any sense, dependencies
of or appurtenant to any other.   There was, in no particu-
lar, unity of use.   In *Chapin* v. *Persse & Brooks Paper
Works, supra,* there was a semblance of such unity, but the
court held that it was insufficient.   Here there was no such
semblance.   It is true that the syndicate represented that
"they were going to erect on said lot three dwelling-houses
to rent," and such was in fact their design.   But the rent-
ing was not intended to be for one common purpose, em-

ployment, enterprise or undertaking, to one tenant, but to three, or rather six. It is doubtless true, also, that each house enhanced the value of the lot, if by lot is understood the entire tract upon which they all stood, but such lot was capable of separation, and would naturally, sooner or later, be separated into as many different lots as there were houses. Such separation would in no wise tend to decrease the value of any part; in fact, if it had any tendency at all, it would rather be to increase such value. There was nothing in common; only the expressed intent of the owners to rent them all separately. It might as well, for all purpose or semblance of unity of use, have been an intent to sell them all separately. The lot was indeed divided, for the purpose of description in mortgaging, so as to include with each house a separate house lot, and the finding says that "if said lot had been in fact divided in accordance with the boundaries given in said several mortgages, *each lot would embrace all the land which is necessary for the use of the house standing thereon*." It seems to us that, under the circumstances disclosed and in view of the decisions which we have reviewed, this finding is clearly decisive against the validity of the claims of the plaintiff and of the other claimants who were made parties.

The conclusion which we have reached renders the consideration of other questions presented, which relate to particular liens and to priorities, and to admission of evidence, unnecessary.

There is error in the judgment of the court below and it is reversed.

In this opinion SEYMOUR and TORRANCE, Js., concurred.

CARPENTER, J., dissenting. The majority of the court in construing the statute relating to liens so as to deprive the claimants of the benefit of its provisions has gone further in that direction, I apprehend, than the court has ever gone before. It may be that some expressions in the opinions in some of the cases give countenance to the position the court

has now assumed. But I think that the logic of the facts in those cases, and the language of the court when considered in connection with those facts, will hardly justify the conclusion drawn.

It will not be denied that in the earlier decisions the inclination of the court was to regard the statute as an innovation and somewhat inconsistent with natural right, and consequently to give it a rather rigid construction. On the other hand, it will be conceded that the tendency in more recent times has been to regard the statute with more favor, and give it a more liberal construction, so as fairly to effectuate its intention. I believe in a strict construction of the statute so far as to require those who would receive its benefits to comply literally with all of its direct and positive provisions; for example, those relating to notices, the filing of the lien, the time when the same shall be done, and the like. But as to those parts of the statute which are less definite, and necessarily more general and comprehensive, a more liberal rule should prevail. The object then should be to construe the statute fairly and reasonably, so as to give effect to the intention of the legislature.

The statute is certainly indefinite in respect to the quantity of land and the number of buildings which may be covered by a lien; and that is the point involved in this case.

I am of the opinion that these liens should have been sustained, and I think that they would have been if the principles to which I have alluded had received their due weight in construing the statute and applying it to the facts of the case.

In this opinion ANDREWS, C. J., concurred.