In the Matter of **GLEN HAVEN ES-**
**TATES, Inc., Bankrupt.**
No. 25426.

United States District Court
D. Connecticut, Bankruptcy Division.
Aug. 30, 1954.

Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for trustees of the Bankrupt.

Gorman, Bohonnon & Peck, New Haven, Conn., for Mechanic's Lienor.

ANDERSON, District Judge.

This matter comes before the court on a petition for review of an order of the Referee in Bankruptcy, invalidating a mechanic's lien which the petitioner, Frederick C. Hahn, had recorded in the New Haven land records on January 12, 1953, just preceding the adjudication in bankruptcy of the Glen Haven Estates, Inc., whose petition in bankruptcy was filed January 19, 1953. The mechanic's lien stated that the lienor, Hahn, had commenced to furnish materials and engineering and surveying services upon land and premises owned by Glen Haven Estates, Inc. on September 25, 1951, and had ceased to do so on December 11, 1952.

The question which is here for review is whether or not, in the light of the Connecticut Statutes, the petitioner Hahn properly described the property upon which he claims to have a lien.

Section 7217 of the General Statutes of the State of Connecticut, Revision of 1949, (subsequently Section 1273b of the 1951 Supplement to the Statutes) reads in part:

"If any person shall have a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances, and such claim shall be by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or shall have been erected or shall have been

<br>
# 660

moved, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building, with the land on which it stands, shall be subject to the payment of such claim. Such claim shall be a lien on such land, building and appurtenances and shall take precedence of any other incumbrance originating after the commencement of such services, or the furnishing of any such materials, * * *."

Section 7218 of the Connecticut Statutes reads in part:

"No such lien shall be valid, unless the person performing such services or furnishing such materials, within sixty days after he has ceased so to do, shall lodge with the town clerk of the town in which such building is situated a certificate in writing, describing the premises, the amount claimed as a lien thereon, and the date of the commencement of the performance of services or furnishing of materials, stating that the amount claimed is justly due, as nearly as the same can be ascertained, and subscribed and sworn to by the claimant; which certificate shall be recorded by the town clerk with deeds of land; * * *."

The pertinent portions of the Findings of Fact by the Referee are the following:

"On and for a long time prior to September 20, 1952 and at all times subsequent thereto, the real property standing in the name of the bankrupt had been sub-divided into a large number of separate building lots, of which a sub-division map dated October 15, 1951 is on file in the office of the Town Clerk of New Haven. Thirty-one of such building lots had partially completed one-family houses upon them and each lot was separately mortgaged. In addition to the thirty-one properties standing in the name of the bankrupt, said sub-division map showed approximately sixty other properties on which single family houses had been constructed and which the bankrupt had conveyed to other parties prior to the filing of any of the mechanic's liens described in Paragraph 1, 2 and 3 of this finding.

"Each of said certificates of mechanic's lien described the premises upon which the lien was claimed substantially in terms of the entire tract covered by said sub-division map, without any reference to particular lots or buildings thereon.

"At said hearing each of said lienors admitted that it was a practical impossibility to allocate his charges to the particular building or buildings for which materials were furnished or services rendered."

The referee concluded that the petitioner's mechanic's lien failed to comply with the requirement of the Connecticut Statutes that the certificate of lien describe the premises upon which the lien is claimed, and he declared the lien to be null and void. Although the facts found seem somewhat spare, counsel for both parties orally stated that the finding contained all of the essential facts of the case. However, counsel for the petitioner, without contradiction from the Trustees' attorneys, did add that the services rendered by the lienor, particularly in the beginning but to some extent throughout the period, consisted in large measure of surveying the property and laying out road-ways and building lots.

■ Giving the petitioner full benefit of this statement, he might claim that from September 25, 1951, the date of the commencement of his services, to September, 1952, his services were particularly addressed to the whole housing development project as a unit, and that, therefore, he had a basis upon which to predicate a lien on the whole project. Whether such a claim would be valid or not, it is not necessary here to decide; but it is very doubtful that under the circumstances the entire development would be a "lienable unit" as there are no facts to show that at this stage his services were rendered in the "construc-

tion, raising, removal or repairs of any building or any of its appurtenances" to bring it within the holding in Marchetti v. Sleeper, 100 Conn. 339, 123 A. 845, 846, where the services of an architect whose plans and specifications were used in the construction of a particular building were found to form a basis for a mechanic's lien on the building and the land on which it stood. In any event from September, 1952, to December 11, 1952, the petitioner claims to have furnished materials and rendered services which inured to the benefit of various separate, single family dwellings which had been or were being built on the project; but apparently he did not and could not produce any evidence of what he furnished or did for any one of these single family dwellings. He then attempted to wrap all of these contributions which he had made from September 25, 1951, to December 11, 1952, into one package for the purpose of claiming a mechanic's lien on the entire development. This, however, he cannot do, as the Connecticut cases make it plain, that all the land and buildings of this development do not constitute a "lienable unit" for his total charges of $7,262.76; and there is, therefore, no lien.

█ Under the "lienable unit" test the court looks to the physical relationship of the buildings and land to determine whether or not they are interdependent and connected in use and purpose so as to be treated as a unit and thereby subject to a single mechanic's lien for continuous and overlapping employment without reference to a particular building under each separate contract for materials or employment. Burque v. Naugatuck Lumber Company, 113 Conn. 350, 155 A. 414; Parsons v. Kenney, 98 Conn. 745, 120 A. 505; Ginsburg v. Capone, 91 Conn. 169, 99 A. 501; Cronan v. Corbett, 78 Conn. 475, 62 A. 662; Wilcox v. Woodruff, 61 Conn. 578, 24 A. 521, 1056, 17 L.R.A. 314.

In Parsons v. Kenney, supra, the lienor worked on three projects on a farm: shingled the barn, built a cow-shed, and built a kennel. The cow-shed adjoined the barn, and the kennel was "somewhat removed from the barn" [98 Conn. 745, 120 A. 506]. The lienor filed a single certificate of lien upon the entire farm for a single indebtedness arising from the work done. The court ruled that the farm and buildings thereon were a lienable unit subject to a single lien. In Burque v. Naugatuck Lumber Company, supra [133 Conn. 350, 155 A. 415], the court upheld a lien described as on a "certain building" on a piece of property specifically described. Actually the lienor had worked on two structures, a garage and house separated by fifteen feet. The court found that "each building was not so independent of and unconnected in purpose and use with the other as to preclude their being subjected, together with the lot on which they stand, to a single lien for services rendered upon both." In Cronan v. Corbett, supra [78 Conn. 475, 62 A. 663], the lienor described his lien as "upon 'a certain building'" on a particular lot, whereas the lienor had worked on three structures of substantially the same size and construction, standing side by side on a particular lot and connected by doors into common passage-ways. The court upheld the lien but cautioned that it "went to the verge of the law" to do so.

However, the present action is quite different on the facts from these cases. It goes beyond the boundaries of the definition which they furnish. Here there are ninety-one single family dwellings each with its own lot of land, of which sixty are owned by purchasers from the bankrupt, and which are completely independent and unconnected. They were not intended to be for one common purpose, use, employment, enterprise or ownership, but were intended to be separate and independent units. The present case is governed by the holding in Ginsburg v. Capone, supra [91 Conn. 169, 99 A. 502], in which the lienor rendered services in the construction of two dwelling-houses having no connection in construction or intended use, and nothing in common except that

both structures stood upon a piece of land that was owned by the same person who contracted for the two buildings, which were separate, independent and susceptible of division. The court declared invalid the single lien on the entire piece of property upon which both buildings stood because "it purported to make two entirely separate and independent properties as an entirety holden for materials and services which went into the construction of both." See also DeWolf v. Bonee, 91 Conn. 712 at page 717, 101 A. 233. It is ordered that the Referee's order be affirmed and that the petition for review be dismissed.