## The MIDDLESEX TURNPIKE COMPANY *against* WENTWORTH:

### IN ERROR.

A four wheeled carriage, drawn by two horses, constructed like a stage coach, except that the sides are not swelled or pannelled, and the

*Middlesex,*
July, 1832.

The Middlesex
Turnpike
Company
*v.*
Wentworth.

body is connected with the axletrees, by curved bars and chains, and is not as much elevated from the ground as the body of a stage coach ordinarily is, used for the transportation of the *United States* mail, and of passengers with their luggage, and passing regularly, twice a week, from *M.* to *S.*, a distance of 26 miles, and back,—is "a pleasure carriage," and "a stage," within the charter of the *Middlesex Turnpike Company.*

This was an action of *assumpsit*, brought by the *Middlesex Turnpike Company* against *William A. Wentworth*, before a justice of the peace, to recover certain tolls for travelling on the plaintiffs' road between *Middletown* and *Saybrook.* The defendant pleaded the general issue.

In *May* 1802, the plaintiffs were created a corporation, by the legislature of this state, and authorized to construct a turnpike road from *Hartford* to *Saybrook*, through the towns of *Wethersfield, Middletown* and *Haddam*, to erect gates and receive of travellers thereon certain tolls at each gate. Among the tolls specified in the act of incorporation, were the following : " For each four wheeled pleasure carriage, driver and passengers, 25 cents ; for each stage, including driver and passengers, 25 cents ; every cart, wagon and driver, 10 cents." From *June* to *December,* 1831, the defendant was the owner of a four wheeled carriage, drawn by two horses, which he, during that period, had regularly driven, twice a week, each way, on the plaintiffs' road and through their gates, between *Middletown* and *Saybrook*, a distance of twenty-six miles ; conveying, in such carriage, the *United States* mail, and passengers, with their luggage, and such other articles as are usually transported in a stage coach. The body of the carriage was shaped like the body of a stage or hackney coach, except that the sides were not swelled nor pannelled. It was covered with curtains, rolling up at the sides ; had a fancy curtain around the inside, of the depth of eight inches ; was painted and varnished ; and had a door and step on one side, and a rack behind for the transportation of the luggage of passengers, like a stage coach. It contained three seats inside, which were covered with morocco leather and stuffed ; the back of the inside was covered in the same manner ; there was a strap across the body, to support the backs of passengers sitting on the middle seat ; and in the forward part, there was a cushioned seat for the driver. The body of the carriage was connected with the axletrees,

*Middlesex,*
July, 1832.

The Middlesex
Turnpike
Company
*v.*
Wentworth.

by bars curved somewhat in the form of an S, and chains, not being as much elevated from the ground as the body of a stage coach ordinarily is.

The plaintiffs claimed, that this vehicle was "a pleasure carriage" or " a stage," subject to a toll of 25 cents, at each gate. The defendant claimed, that it was " a wagon," subject to a toll of 10 cents only ; and he had paid no more. The suit was brought to recover the difference.

The court decided the point in controversy in favour of the defendant, and rendered judgment accordingly. The plaintiffs filed a bill of exceptions, placing the facts above stated upon the record, and thereupon brought a writ of error in the superior court ; and the judgment of the justice being there affirmed, the plaintiffs, by motion in error, brought the record before this Court for revision.

The counsel for the plaintiffs in error were stopped by the Court.

*Barnes* and *Bulkley*, for the defendant in error, after remarking that the imposition of toll for travelling on a highway being against common right, any doubt on the subject of controversy must be resolved in favour of the defendant, contended,

1. That the vehicle described in the bill of exceptions is not "a stage" within the meaning of the charter granted to the plaintiffs. The class of carriages to which a particular vehicle belongs, is not determined by its use. A cart, wagon or sulkey does not become a *stage*, because it is used for the transportation of the mail. Nor does the conveyance of passengers, their luggage and freight from place to place, on stated days of the week, in any vehicle, necessarily constitute that vehicle a stage. The true enquiry is ; does the vehicle in question correspond with the kind of carriage known as a stage when the charter of the plaintiffs was granted ? And this does not depend on what is technically denominated the carriage or running part, (which may be substantially the same for all vehicles) but upon the form, size and construction of the body, and the mode of suspending it upon the carriage part. The bodies of stages have many things in common with covered wagons, but they have some distinguishing

*Middlesex,*
*July, 1832.*

The Middlesex
Turnpike
Company
*v.*
Wentworth.

traits, such as swelled sides with pannel-work, curved ends, doors and windows on each side ; and they are suspended by thorough-braces and springs. These things constitute the specific difference between a stage and a covered wagon ; and they are all wanting in the vehicle described in the bill of exceptions.

2. That the vehicle described is not " a pleasure carriage." It is constructed and used solely for the purpose of *labour,* and not of *pleasure.* This designation belongs to no vehicle, which is not constructed with special reference to the ease and comfort of the passengers ; and surely, their ease and comfort are not consulted, by riding in a carriage resting on iron bars.

PETERS, J. The carriage in question is either a pleasure carriage, or a stage, or both. A pleasure carriage is one for the more easy, convenient and comfortable transportation of persons. A stage is any carriage, that travels by set stages. They are both usually and chiefly employed in the transportation of mails, passengers and baggage. Such is the popular meaning of their names. Their form, use and name designate their character. In *Moss* v. *Moore,* 18 *Johns. Rep.* 128. the supreme court of *New-York* decided, that a one-horse wagon, made with spring seats and pannelled sides, in which two persons were riding, was a pleasure carriage. Surely, the pannelled sides could add nothing to the pleasure of the riders. The spring seats only would have that effect. I am, therefore, of opinion, that there is manifest error in the judgment complained of.

The other Judges were of the same opinion.

Judgment reversed.