## SETH PATTEE *versus* WILLIAM H. MCCRILLIS.

By c. 44, § 1, of the Public Laws of 1858, the protest of any foreign or inland bill of exchange, &c., duly certified by any notary public under his hand and official seal, shall be legal evidence of the facts stated in such protest, as to the same, and also as to the notice given to the drawer or indorser, in any court of law.

If a notarial certificate, after stating the date, his official character, demand and refusal, recite that " the draft remaining unpaid, I duly and officially notified the drawer at" his post office address, — naming it, " per mail, requiring payment," it is *prima facie* evidence of notice.

ON REPORT from *Nisi Prius*, APPLETON, C. J., presiding. The facts sufficiently appear in the opinion.

*A. W. Paine*, for the plaintiff.

*Wm. H. McCrillis, pro se.*

Two facts must appear to charge the drawer in this case, viz., presentment at proper time and place, demand and refusal; and that notice of the same was sent by the next post to the drawer.   Language of the notice must cover these facts, as that the bill had been protested.   *Cayuga Bank* v. *Warren*, 1 Coms., N. Y., 414 ; *Porter* v. *Judson*, 1 Gray, 177 ; *Gilbert* v. *Dennis*, 3 Met., 495 ; *Clark* v. *Eldridge*, 13 Met., 96.   Only notice in case at bar was "requiring payment."   *Vide notarial certif.*   Bailey on Bills, 335.

Notice did not apprize the drawer that payment was required of the bill in question. Bailey on Bills, 335, 336, 337 and 338. The certificate does not state whether the notice to the drawer informed him that payment was required of him as drawer, indorser or acceptor.

The notary is agent of the holder, and if language used leaves a doubt as to its meaning, it must be taken strongly against the party using it. *Verba ambigua fortius accipiuntur contra proferentem.*

APPLETON, C. J.—This is an action against the defendant as drawer of a bill of exchange. To charge him, the plaintiff must show the dishonor of the draft and seasonable notice of such dishonor. In the numerous cases cited in argument, the notices sent by the notary or the holder of the draft to the drawer were before the Court, and in each case the sufficiency of the notice was determined by the language of such notice. It is otherwise in the case under consideration, for the notice sent has not been produced.

By the Act of 1858, c. 44, § 1, "the protest of any foreign bill of exchange or promissory note, or order, duly certified by any notary public under his official seal, shall be legal evidence of the facts stated in such protest, as to the same and also as to the notice given to the drawer or indorser, in any court of law."

The notary, in his protest, after giving the date and his official position, proceeds as follows:—"at the request of the holder, Mace Tisdale, Esq., (I) went with the original bill of exchange, which is hereto annexed, the time limited and grace having elapsed, to the Suffolk Bank and demanding payment was answered that the acceptor had no funds there.

"The draft remaining unpaid, I duly and *officially notified* the drawer at Bangor, Maine, and the indorser at Bangor and at Portland, Maine, *per mail*, requiring payment."

This is the act of a public officer as described in an official certificate made evidence by statute. He notified the parties to the bill duly and officially. It was in writing, *and sent by mail.* The notices were sent on the day of the protest and to the several parties at their respective places of residence. Their seasonable reception is not denied. The notice to the defendant is not produced nor are its contents stated. If insufficient in form the defendant would produce it, or if lost, being a competent witness, would state its contents. But it is not produced, nor are its contents stated. The presumption under such circumstances is that the notary notifying *officially*, his notices were sufficient to charge the parties to be notified.

Such, too, is the entire weight of judicial authority. In *Gallada* v. *Bank of the Union*, 2 Head, (Tenn.,) 57, the only proof of notice was in this sentence in the body of the protest:—"I then notified the drawers and indorsers." The statute of the State provided that, when " the notary shall have certified, either in or on his protest, that he has given notice of demand and payment and refusal, or the dishonor of such bill," &c., " to the indorsers, makers or others concerned, such protest shall be *prima facie* evidence of the fact of notice." "The fact," observes CARUTHERS, J., "is to be stated, by the notary either in or on his protest. But it is said that he must state the time when the notice was given, the postoffice to which it was sent and all the particulars necessary to make out a good legal notice under the law merchant. The Act does not expressly require this. The notary is a public officer, and when he certifies that he has done an official act, it must be presumed that he has done it correctly, unless some statute or rule of law prescribes a particular mode, until the contrary appears. It is only made *prima facie* evidence. It is no hardship on a defendant, who is relying on strict law, and generally without merit, to get clear of a debt, to require him to *rebut* this presumption. It would be easy to prove by the notary, if

he had not done enough to fix the liability." In *Cayuga Bank* v. *Hunt*, 2 Hill, 635, the notarial certificate of protest stated a presentment for payment at the office of the acceptor, on the proper day, and that the office was closed, but was silent with respect to the *hour* of doing the act. "But it is objected," observes COWAN, J., "that the time of day should have been mentioned in the notary's certificate; for perhaps it might have been after the hours of rest. The certificate states it was presented on the third day of grace. This, coming from a witness on the stand, would be deemed *prima facie* evidence of presentment at a proper time in the day; and, if an improper hour were in truth selected, it would lie with the adverse party to show the fact by cross-examination or otherwise. It would not be intended that a late hour was resorted to." These views were again announced and maintained in *De Wolf* v. *Murray*, 2 Sandf., 166. In New Hampshire, there is a statute similar in its terms to the Act of 1858, c. 44. In *Rushworth* v. *Moore*, 36 N. H., 188, the notarial certificate shew that he "duly notified the indorsers." "The notary certifies," remarks FOWLER, J., "that he duly notified the indorsers; whereas it has been contended that he should have set forth how, when and where the notices were given. We do not understand that such is the usual course in notarial protests, or that the statute requires any such recital to make the protest *prima facie* evidence of notice to indorsers."

The decisions in this State are to the same effect. In *Lewiston Bank* v. *Leonard*, 43 Maine, 144, the notarial certificate was that, he "duly notified the indorsers by written notices, sent them by mail," &c. It was held a reasonable inference that the notices sent contained all that was essential to charge the indorser. In *Orono Bank* v. *Wood*, 49 Maine, 26, the certificate of the notary that he had "duly notified the drawer and indorser" was held sufficient, in the absence of contradictory proof.

The protest makes out a *prima facie* case for the plain-

tiff. The presumption, in the absence of proof to the contrary, is that the notice sent was sufficient.

*Defendant defaulted.*

CUTTING, KENT, DICKERSON, BARROWS and TAPLEY, JJ., concurred.