SAMUEL SWAN ET AL. *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, Oct. Term, 1897.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In an action against an officer for a negligent escape and for a failure
to return the process to court, the plaintiff is entitled to recover
the actual damage he has sustained by reason of the officer's de-
fault.

Ordinarily the amount of this damage is *prima facie* established by
proof of the judgment in the former action and of the plaintiff's
inability to collect it by legal process. But where the officer's fail-
ure to return the writ and complaint makes such evidence impos-
sible, the plaintiff may prove what judgment he might or could
have obtained in the former action, had the process therein been
returned to court.

A complaint alleged that the defendant obtained a loan from the plain-
tiff by means of a forged and counterfeited promissory note. The
evidence showed that the plaintiff was induced, by means of the
forged note, to surrender to the defendant a valid claim against
him, evidenced by a note upon which he was indorser. *Held* that
the gist of the action was the fraud of the defendant, and that the
allegation of a loan was merely matter of inducement. *Held* also,
that if such allegation could be regarded as a material one, the
facts proved showed no fatal variance, inasmuch as it appeared that
the parties had treated the notes as money or as a loan.

The trial court found that the plaintiff's damage was the amount due
him upon the forged note, and rendered judgment for that sum.
It did not appear that a judgment against the defendant in the for-
mer action would have been valueless, nor did the finding disclose
any facts which would necessarily have reduced the plaintiff's loss
below the amount due upon the forged note. *Held* no error.

[Argued October 28th, 1897—decided January 5th, 1898.]

ACTION to recover damages for the default of the sheriff
of the defendant city, brought to the Court of Common
Pleas for Fairfield County and tried to the court, *Carroll, J.;*
facts found and judgment rendered for the plaintiffs, and
appeal by the defendant for alleged errors in the rulings of
the court. *No error.*

Section 21 of the charter of the city of Bridgeport, 10
Special Laws, 519, provides that "the sheriffs of said city

shall severally have, within the limits of the jurisdiction of the City Court, the same power and authority, and be liable to the same suits or penalties for neglect of their official duty, to all intents and purposes, as sheriffs by law now have and are; and the said city shall be liable for the defaults of its sheriffs in their offices."

The complaint describes the default of the city sheriff as follows : —

" On said 17th day of September, 1894, the said Swan & Bushnell had a valid claim against one Edward Klaus of Bridgeport, Connecticut, to the amount of $240, which said claim was of such a nature that the body of said Klaus was liable to be attached therefor and have execution levied thereon to satisfy the same. On said day Swan & Bushnell, through their attorney, caused to be placed in the hands of said Dwight Thompson, a sheriff of said city of Bridgeport, a writ legally issued and signed, commanding him, the said sheriff, to attach to the amount of $400 the goods or estate of said Klaus, and in want thereof his body; and the sheriff being unable to find any property of the said Klaus, did attach his body to respond to the demand of said writ and took said body into his possession. Immediately thereafter, while the body of said Klaus was still in his possession, he, the said sheriff, negligently and carelessly permitted him, the said Klaus, to escape from his custody, and the said Klaus by means of said carelessness and negligence of the sheriff was enabled to so escape and did flee from said sheriff out of his jurisdiction and out of the State of Connecticut, where he has ever since remained. After said escape said sheriff made no further efforts to serve said process, and did not otherwise serve the same than as stated, and did not return said writ to the court to which it was returnable. The said Klaus owned no property of any kind that can be taken to satisfy this claim of said Swan & Bushnell, and by his said escape from said sheriff and by said misconduct and negligence of said sheriff as aforesaid described, the said Swan & Bushnell have lost their said claim and all chance to secure the same or to enforce payment thereof."

The following are the material averments of the complaint of the plaintiffs against Klaus, and under which Klaus' body was attached as above described: "1. On the 20th day of May, 1894, the defendant obtained a loan of the plaintiffs to the amount of $240, and gave them therefor a certain note of that date for said amount, signed by R. Klaus, Mary Klaus, Fred. Hardy, and Marshall E. Gray, payable to the defendant's order and endorsed by him. 2. Said names of the makers of said note were forged and counterfeited. 3. The defendant at the time he obtained said loan upon said note knew that the said names were forged and counterfeited, but represented that they were genuine, with intent to defraud the plaintiffs. 4. The plaintiffs believed that said names were genuine, and relying upon said representation, they loaned the said defendant said money. 5. Said note is still unpaid and in the possession of the plaintiffs, and the defendant is wholly irresponsible."

The following facts found by the trial court are more or less material to the questions involved in this appeal: During the time of the dealings that the plaintiffs had with Edward N. Klaus, referred to in the complaint, the latter was conducting a saloon business in Bridgeport. Apparently he owned the saloon—that is, the stock in trade and fixtures—and he so told the plaintiffs when they first advanced him money. The plaintiffs believed that he owned the business which he was conducting, both in consequence of what he told them, and also in consequence of the way in which the business appeared to be carried on. As a matter of fact, during the latter part, at least, of the time Klaus conducted the saloon, a brewing company owned the saloon and its business, and paid Klaus a salary for his services. Either Klaus had bought the saloon and had sold it to the brewing company, while still continuing in charge of the business, some time before he absconded, or else he never owned it. The interest of the brewing company in the saloon was not known to the plaintiffs until about the time Klaus absconded. On February 20th, 1894, one Ernest Hockheimer, Jr., indorsed over to the plaintiffs a promissory note executed in his favor by Klaus.

The plaintiffs paid Hockheimer $60 for the note. Its face value was considerably more than what the plaintiffs paid for it. Whether the note was then not due or was overdue, did not appear; nor did the nature of the indorsement appear, whether in blank, or with a waiver of demand and notice, or otherwise. On February 21st, 1894, the plaintiffs paid Klaus, $98.45 for a note in favor of Klaus, apparently given by one Marshall E. Gray, and indorsed by Klaus. The amount of this note and the time when it became due did not appear in evidence; nor did it appear whether demand or notice were waived in the indorsement of the note. Gray was known to the plaintiffs as an owner of real estate and other property. At this time Klaus told the plaintiffs, and they believed him, that the note to Hockheimer represented a part of the purchase price of the saloon business, which he said he had bought of Hockheimer, and that the Gray note represented goods that Gray had bought of Klaus. So far as Gray's signature to the note bearing his name was concerned, it was a forgery, and Gray did not owe Klaus anything. Klaus knew this note was forged. The plaintiffs bought and paid for the note in consequence of what Klaus said about his affairs, and because he said the note was given by Gray. On March 6th, 1894, the plaintiffs, also because of their belief in Klaus' ability and business condition, as represented by him, loaned him $30. On May 20th, 1894, the plaintiffs, who had been pressing Klaus for some time to pay the notes and the loan, told him that he must pay the moneys, all of which were then due them, or else he must do something to secure them. Klaus accordingly suggested that he get a note from his sister, Mary Klaus, who was known to the plaintiffs as owning property, and from Gray. The plaintiffs agreed to this proposition and wrote out a joint and several note for $240, which was the correct total amount due them upon the two other notes and from the loan, as then ascertained and agreed by the plaintiffs and Klaus, payable on demand after May 20th, 1894, to the order of Edward N. Klaus, at the office of the plaintiffs, for value received. The same day Klaus returned with the note apparently bearing the signa-

tures of his sister Mary and of Gray, as makers, and of R. Klaus and of Fred Hardy, also apparently as makers, who, however, as he said, were witnesses. Klaus indorsed this note in blank, waiving demand and notice. The plaintiffs accepted the note in satisfaction of their other claims, under an understanding that he was to pay $10 a month on it until paid. At the same time they gave up to Klaus the other two notes, in consequence of their belief in the genuineness of the new note then received by them and given them by Klaus as a genuine note. Whether or not at that time Klaus had enough property to make it possible to collect the notes from him, did not appear. As a matter of fact, the signatures of Mary Klaus, Marshall E. Gray, and Fred Hardy on this note, were forgeries, and Edward N. Klaus knew them to be forgeries. What the plaintiffs did in the way of advancing moneys to Klaus, giving up notes, extending his time for payment, and altering their position generally in their dealings with him up to this time, had been done in consequence of his false and fraudulent representations as to his business affairs, and as to the names appearing on the notes. Two payments of $10 each were made on this last note. Early in September, 1894, the plaintiffs discovered that the names of the makers of this last note were forgeries.

On September 17th, 1894, the plaintiffs caused to be issued a writ, with its accompanying complaint, dated on that day, directed to the sheriff of the county of Fairfield, his deputy, or either sheriff of the city of Bridgeport, and returnable on the first Tuesday of October, 1894, to the Court of Common Pleas for Fairfield county. The writ was given to sheriff Thompson for service, on the day of its issuance. He served the writ on Klaus and attached his body, in default of finding attachable property. After keeping Klaus in his custody over night, the officer negligently and inexcusably permitted him to escape some time the next morning. The officer further negligently and without excuse omitted to return the writ to court, and made no return of his doings on the writ. Neither the plaintiffs nor their attorneys knew of the failure to return the writ to court, until long after its return day,

and until too late to get judgment upon it. At the time the writ was served on Klaus, he had no property liable to attachment, so far as known to the plaintiffs, their attorney, or the officer. Before then he had some money, but how much it was or what became of it, did not appear in evidence. He was twenty-six years old. His mother owns some property. Upon his escape from arrest he left the State and went to parts unknown. His present whereabouts are unknown. The loss and damage sustained by the plaintiffs by reason of the officer's negligence, amount to $256.30; for which sum, that being the amount due upon said $240 note with interest, the court rendered judgment for the plaintiffs.

The following are among the reasons of appeal: " The court erred and mistook the law in holding and deciding that it did not devolve upon the plaintiffs to prove affirmatively that they were in fact actually damaged by the said officer's said neglect, and to further prove precisely the extent of such damage in order to recover at all. The court erred and mistook the law in holding and deciding that the plaintiffs were entitled to recover any damages by reason of said neglect of said officer, when it appeared upon the trial of this action, as shown by the finding, that the cause of action alleged and set up by the plaintiffs in their said writ and complaint against said Klaus, did not in fact exist, and that upon said writ and complaint, as the facts existed and are found in the finding in this action, the plaintiffs could not have recovered against said Klaus in said action at all, but, on the contrary, judgment in said action would have been rendered against them on said writ and complaint for the costs of said action. The court erred and mistook the law in holding and deciding that the plaintiffs were entitled in this action to recover damages for the said officer's neglect to serve and return said writ, upon the theory that some other cause of action might by amendment have been substituted for the cause of action alleged and set up in said complaint in said writ against said Klaus. The court erred and mistook the law in holding and deciding that the plaintiffs were entitled to recover as damages the full amount of said forged

note, deducting the payments thereon made, when it appeared from the evidence, as shown by the finding in this case, that the said forged note was for a prior indebtedness already contracted and in existence when said note was given, and that said note, being on demand, was not the means of procuring from the plaintiffs any valuable thing, or placing the plaintiffs in any worse condition than they were in before, as regards their said claims against Klaus and his indebtedness to them."

*Robert E. DeForest,* for the appellant (defendant).

*J. C. Chamberlain,* with whom was *Elbert O. Hull,* for the appellees (plaintiffs).

HALL, J. Section 21 of its charter renders the city of Bridgeport directly liable for the defaults of its sheriffs in their offices and imposes upon them, within certain territorial limits, similar duties to those which are by law imposed upon sheriffs generally. Among the duties which a sheriff owes by law to plaintiffs in civil actions, is that of executing "with reasonable diligence according to its terms, all lawful civil process . . . duly delivered to him for service within his jurisdiction." Mechem on Public Officers, § 744. Section 1992 of our General Statues provides that " each sheriff shall receive all process directed to him when tendered, and execute it, and make return thereof," etc.

The facts of record show a default in office of city sheriff Thompson in negligently permitting Klaus, whom he had arrested under the civil process placed in his hands by the plaintiffs, to escape, and in neglecting to return the process to the court to which it was returnable.

Upon this appeal we are called upon to consider, (1) what the rule for damages is for such breach of duty of the city sheriff ; and ( 2 ) whether under such rule, upon the facts found by the trial court, the plaintiffs could be entitled to a judgment for the amount due on the $240 forged note.

The language of the section of our statute, above cited,

is : "If any sheriff shall not duly execute and return the process, or shall make a false or illegal return thereof, he shall be liable to pay all damages " to the party aggrieved. The law is well established that for such default in failing to execute the mandates of *mesne* process, the officer becomes liable to the injured party to the amount of the damage actually sustained.   Mechem  on  Public  Officers,  §§ 759, 764; 2 Sedgwick on Damages (8th ed.), § 544; 1 Swift's Dig. s. p. 542.   The amount of the debt is not necessarily the measure of such damages.   It is the actual loss which the aggrieved  party  has  suffered  by reason of the officer's default.    *Clark* v. *Smith*, 9 Conn. 379, 10 id. 1; *Palmer* v. *Gallup*, 16 id. 555 ; *Bank of Hartford County* v. *Waterman*, 26 id. 324.   The acts themselves, of such defaulting officer, do  not  constitute  the  injury  for  which  the law gives the plaintiffs reparation, but the damaging consequences of such acts.    The  injurious  consequence  is  the  interference with the plaintiffs' right to collect their debt by legal process.

To prove his damage, at least beyond a nominal sum, for a negligent  escape  or  a  failure to attach on *mesne* process, the plaintiff is ordinarily required to proceed and establish his debt by judgment; since judgment may be satisfied notwithstanding the failure to attach, or the defendant who has been permitted to escape may be produced in court to respond to final judgment; in either of which cases the plaintiff would have suffered no actual loss from the acts of the delinquent officer.   1 Swift's Dig. s. p. 543 ; *Bank of Hartford County* v. *Waterman, supra*.   But the plaintiff having thus established his debt and his inability to collect it by legal process, has proved, *prima facie*, a liability of the defaulting officer to the extent of the debt thus established; and the burden thereupon rests upon the defendant to prove that the actual loss of the plaintiff was less than the amount of such debt.    2 Sedgwick on Damages (8th ed.), § 545 *et seq.;* Mechem on Public Officers, § 759 ; *State ex rel. Shirk* v. *Mullen*, 50 Ind. 598 ; *Hootman* v. *Shriner*, 15 Ohio St. 43 ; *Brooks* v. *Hoyt*, 6 Pick. 468.

In the present case it was impossible for the plaintiffs to

prove their debt in their action against Klaus. They were prevented from doing so by the escape of Klaus beyond the jurisdiction of the court, and the failure of the officer to return the complaint to court. They are, however, required in this action to prove the judgment which they could have obtained in the action against Klaus, had the process been returned. This accords with the claim of defendant's counsel in his brief, that "the plaintiffs, in order to recover in this action, were bound to show, not only that said city sheriff Thompson neglected to attach the body of Klaus and to return said writ to court, but also that if said writ had been returned the plaintiffs would have recovered damages upon it."

But the defendant insists that the plaintiffs could not have recovered in their action against Klaus, had the complaint in that suit been returned. The cause of action described in that complaint, say defendant's counsel, was the obtaining of a $240 loan from the plaintiff, by false representations, and the facts show that no such cause of action existed; nor, says the defendant, can the plaintiffs avail themselves in this action of any right which they might have had to amend that complaint, had it been returned to court, since the defendant can only be held liable for the failure of the officer to serve the writ placed in his hands, and not a writ describing a different cause of action; and since the complaint in the present action counts solely "upon the neglect of the officer to serve and return the writ as it was placed in his hands." This argument of the defendant is, in our judgment, invalid.

The suit against Klaus was not to recover the $30 which the plaintiffs had loaned him, together with the sums they had advanced on the Gray and Hockheimer notes. The gist of that action was the fraud of Klaus in indorsing and delivering to the plaintiffs a forged note in satisfaction, by agreement of the parties, of a valid claim of $240 which the plaintiffs held against Klaus, and which was evidenced by the note for that amount set forth in the complaint and indorsed by Klaus. It was immaterial whether that valid

claim was for money loaned, or was a sum due upon notes which Klaus had made or indorsed. The averment that Klaus had obtained a loan of the plaintiffs, was a matter of inducement which need not be stated with particularity nor strictly proved. 1 Chitty on Pleading (16th Amer. ed.), 296; 1 Swift's Dig., s. p. 604; Bliss on Code Pleading, § 311. Under the allegations of that complaint, proof of the indorsement and delivery to plaintiffs, for a valuable consideration, by Klaus, of the note which he knew to be forged, entitled plaintiffs to a judgment for the amount due by the terms of the note.

But we think that if the allegation that Klaus obtained a loan of the plaintiffs, be regarded as a material one, the facts show no fatal variance. The transaction was in effect the same as if the plaintiffs had loaned Klaus $240 upon the forged note, and he had thereupon paid the $30 which he owed them, and taken up the two notes upon which he was liable. If without taking that course the parties themselves preferred to treat the notes as money, and the new arrangement as a loan, they were permitted to do so. We think the transaction may be treated as such an agreement.

The finding discloses no facts which would have rendered a judgment against Klaus valueless, or which would necessarily have reduced the plaintiffs' loss below the amount due upon the forged note. From the record it does not appear that defendant offered any evidence for that purpose. Apparently the defendant relied upon its claim that it devolved upon the plaintiffs to prove that the judgment would not have been collectible. The trial court found the plaintiffs' damage to have been the amount due upon the forged note; that at the time the writ was served Klaus had no attachable property so far as was known to the plaintiffs, their attorney, or the officer; that " before then he had some money, but how much it was, or what became of it, did not appear in evidence." There is no finding that Klaus was insolvent.

As in our opinion the plaintiffs could have recovered judgment in their action against Klaus, without amending their complaint, it is unnecessary for us to determine whether

they could. have recovered in the present action had such amendment been required.

There is no error.

In this opinion the other judges concurred.