[No. 1631.]

## THE PEOPLE FOR THE USE OF SCHAYER v. KENDALL ET AL.

1. LIMITATION—SUIT AGAINST SHERIFF FOR CONVERSION OF FUNDS.

Where a sheriff converted to his own use money received from the sale of property under a writ of attachment, limitation would not begin to run against an action by the attachment plaintiff on the official bond of the sheriff to recover the money converted until final judgment was entered in the attachment suit in favor of plaintiff, both as to the attachment defendant and an intervener claiming the property.

2. SHERIFFS—LIABILITY OF SURETIES—CONVERSION OF FUNDS.

Where money came into the hands of a sheriff by sale of perishable property under a writ of attachment and pending the litigation in the attachment suit but after the sale of the property, the sheriff's term of office expired and he was re-elected and gave a new official bond and when the attachment suit was ended the sheriff defaulted in the payment of the attachment fund, the sureties on his official bond at the time of the execution of the writ and sale of the property were liable for his default.

*Error to the District Court of Garfield County.*

Mr. M. J. BARTLEY, for plaintiff in error.

Mr. HENRY T. SALE, for defendants in error.

BISSELL, P. J.

The plaintiff in error presents but two propositions as determinative of the issues raised by the record, and the defendants only by negation contest the positions assumed in the argument. The statute of limitations and the non-liability of the sureties on the first bond executed were the matters of defense.

Both are inadequate and have been so adjudged. As to at least one question the proposition is foreclosed by a decision of the supreme court.

Kendall was elected sheriff of Garfield county in 1885, gave a bond as required by statute, but this obligation proving unsatisfactory to the county authorities he gave a new bond with the present defendants as sureties in January, 1887. While this obligation was in force, and in the following May, Wolf and Schayer and sundry other parties commenced suits by attachment against Dalton & Riley on divers money demands. Under the writs the sheriff seized a lot of goods supposed to belong to the firm. They were perishable and the attaching creditors obtained an order of which no complaint was made, directing the sheriff to sell the property and hold the money to await the result of the suits. The property was sold and the sheriff got the money, which amounted to about $1,800. In these suits one Caddon intervened claiming title to the property. The intervener made no complaint about the sale of the property, but simply insisted the goods were his and he was entitled to the proceeds. Judgment was entered in the county court against the intervener and subsequently against the attaching defendants. The intervener, however, took an appeal to the district court as he might, and the case stood in that court for further trial *de novo* under the statute. Therein a like order was made requiring the sheriff to hold the money to await the determination of the issue raised by the petition of intervention. Whether this order was at all necessary we do not consider for no question is made respecting it by any of the parties in interest. All these proceedings were had in 1887 while Kendall was sheriff and under writs in his hands for execution, while the bond referred to was in full force. Subsequently Kendall defaulted and absconded, having the money in his possession. After this an order was applied for requiring the sheriff or his deputy to turn the money over to the clerk. This was done in 1888. No objection was made to the order and it probably was entered either by the consent of all the parties or without objection from any. The money was not forthcoming, it was not in the hands of the deputy or in the office and the sheriff was

gone. Intermediate to some of these proceedings, and in 1887, Kendall was re-elected sheriff of Garfield county for another term and gave a new statutory bond thereafter. This second bond was in force when Kendall absconded and when the orders to turn over the money were entered. The present suit was not begun against the bondsmen until more than a year from the time the money was received, nor until 1891. The issue between the attaching creditors and the intervener was not concluded until October 9, 1890. This litigation was finally determined in favor of the attaching plaintiffs. The suits against the attachment defendants had long been ended. All the claims of the other attaching plaintiffs passed by assignments to Schayer, and the whole title to the money ultimately vested in him and he began · this suit in the name of the people for his use.

Manifestly on these facts, and they are gathered entirely from the pleadings, the questions foreshadowed at the commencement of the opinion are the inquiries to be determined. Under the limitation statute which is applicable to suits against public officers, the lapse of time would be a good defense to this action against the bondsmen, providing the cause of action arose within the meaning of the statute at the time Kendall absconded, or at the time the several orders were issued which required him to pay over the money to the clerk of the court. The time when a cause of action arises against a sheriff for the breach of an official duty, so as to start the statute running, has been the subject of considerable judicial discussion. The authorities are not all agreed, but the weight of them as determined by the supreme court are to the point that the cause does not necessarily arise at the time the officer fails to perform his duty, for at that point no legal wrong or injury to the plaintiff may have been committed. If the injury is complete at the time of the act the statute starts to run, but if the act is not legally injurious until certain other consequences occur, then the cause of action does not arise at the time of the breach by the officer, but at the time of the happening of the injurious conse-

quences. This comes from the circumstance that there is no relation of contract between the officer and the creditor in whose favor the process issues, and this creditor can have no right of action against the officer and can legally suffer no damage until it comes to him because of the failure to perform. *Bank of Hartford County v. Waterman,* 26 Conn. 323; *Clark v. Smith,* 9 Conn. 379; *Lesem v. Neal,* 53 Mo. 412; *Bailey v. Hall,* 16 Me. 408; *Harriman v. Wilkins,* 20 Me. 93; *Van Nest v. Lott,* 16 Abbotts' Prac. 130; *King v. Rice,* 12 Cush. 161; *Rose v. Dunklee,* 12 Colo. App. 403; *People v. Cramer,* 15 Colo. 155.

The Colorado case, as we read it, is entirely decisive of the proposition. The court therein reviewed the authorities, considered the proposition, cited the 26th Connecticut to which we have referred, adopted the reasoning of that case and quoted largely from it, and therein directly decided the statute is not to be computed from the time at which the officer fails to perform his duty, unless the injury to the creditor then arises, but there must be the union of the breach by the officer and the legal damage resulting to the creditor in order to entitle him to maintain the suit and start the statute running. It is quite clear from the statements in these pleadings no cause of action came to the plaintiff Schayer or his assignors prior to the time judgment was rendered against the intervener who was asserting an adverse title to the stock seized under the attachment. Neither Schayer nor his assignors could have brought suit against the sheriff at the time they had judgment against Dalton & Riley. These judgments were necessarily conditions precedent to the right to sue, but of themselves they gave the attaching plaintiff no cause of action because Caddon, the intervener, was asserting a title to the property in a way permitted by the statute, and until the controversy between him and the attachment plaintiff was determined, and the title to the property adjudicated, the attachment plaintiff could not sue the sheriff for the money which was the proceeds of the property seized. Since this is true, and it requires neither argument nor authority

to sustain the position, a cause of action did not under the *Cramer* case come to the plaintiff until judgment was obtained on the 9th of October, 1890. At this date the statute of limitations commenced to run and not before, and this suit was brought in apt time.

The only remaining question respects the liability of the sureties on the bond given in 1886, when the attachment was levied and the property sold. It is quite generally true that the officer holding the writ and executing it, is the one liable to the plaintiff for the due performance and for the ultimate payment of the money which comes into his hands by virtue of the process. This is a general proposition respecting which there is little if any dispute. It is likewise true, the sheriff to whom the process is issued continues as the officer for the purposes of the execution of the writ even after the expiration of his term of service and the appointment or election of his successor. Under the ancient law, and this is still the rule in the absence of a statute, when an execution or attachment was placed in the hands of an officer for service and he commenced the service, he continued its execution to the end, made sales of the property thereunder, collected the money and was responsible to the execution plaintiff for the proceeds. It made no difference whether he remained in office or went out of it; whether he was succeeded by another or succeeded himself. The result in all cases was precisely the same. This rule has in no measure been modified by our statute, but the statute in reality is declarative of the provisions of the common law respecting the duties and liabilities of officers. The sheriff going out of office is given express authority and is directed by statute to proceed with his execution as if his term had not expired and the sureties on his bond are made liable for any omission of his duty in executing it to the same extent as though the duty had been performed during his term. General Statutes, 1883, sec. 603. This general doctrine is supported by a great many cases, a few of which only shall we cite. *Elkin et al. v. The People*, 3 Scammon, 207; *The State v. Hamilton*, 16 N. J. L. 153;

*Sidner v. Alexander*, 31 Ohio State, 378; Crocker on Sheriffs, § 856 *et seq*; Murfree on Sheriffs, § 1038; *Baker v. Baldwin*, 48 Conn. 131; *Tyree v. Wilson*, 9 Gratt. (Va.) 59; *Campbell v. Cobb*, 34 Tenn. 18; *Lawrence v. Rice*, 12 Metcalf, 527; *Sagely v. Livermore*, 45 Cal. 613; *Tate v. People*, 6 Colo. App. 202; *Greig v. Ware*, 25 Colo. 184.

When, therefore, the writs of attachment came into the hands of the sheriff, he was bound to levy on the property, the property was legitimately sold in the due performance of his official duty, and the money regularly came into his hands under the bond sued on and he was directed then by the court to hold it to abide the result. The money came into his hands as sheriff and for the fulfillment of his duty with reference to that fund the sureties on this bond were undoubtedly liable. The acts were done while the bond was in force and done by Kendall as sheriff. He held the money as such officer and was bound notwithstanding the expiration of his term and the execution of a new bond, to turn over that money to the plaintiffs in the suit on the determination of the question of title in their favor. He was not bound, nor would he have been bound had he been succeeded by another individual to turn these funds over to the incoming sheriff. The sheriff's bond under our statute contains three separate conditions and no one of them requires him to turn over to his successor the moneys which come into his hands by reason of the performance of his official duties. This he is bound to pay over to the party to the suit who becomes entitled to it upon its determination or upon his completion of the execution of the process. This is established by the authorities generally, is recognized by the decisions of the state, and to this rule there seems to be no well established exceptions. The defendants in error cite us to no case which holds a contrary doctrine.

The result of the argument is, the suit was brought in apt time, was not barred by the statute of limitations and the bondsmen in this instance were liable for the failure of the sheriff to turn this money over to the attachment plaintiff

who ultimately established his title thereto. The decision of the court below was not in accordance with these rules and the case must therefore be reversed and sent back for further proceedings in conformity with this opinion.

*Reversed.*