*Fairfield,*
July, 1847.

The Bank of
Charleston
*v.*
Curtiss,

## The Bank of Charleston *against* Curtiss :

### IN ERROR.

*A*, a mechanic, entered into a contract with *B*, in consideration of a certain sum to be paid by *B*, to erect for him a dwelling-house and barn upon a building-lot containing about one acre. After the work was partially completed, *B* sold the lot to *C*, who assumed *B's* obligations to *A*. Another contract was then made between *A* and *C*, by which *A* agreed to erect fences, &c. on the lot. Within sixty days after the stipulated work was finished, *A* lodged in the town-clerk's office a certificate, stating, that he claimed a lien on the buildings and premises, describing the latter by particular boundaries, for the materials furnished and labour expended, under the above-mentioned contracts amounting to 1900 dollars. About three months previous to the lodging of this certificate, *D*, a creditor of *B*, attached the premises as *B's* property, and eventually obtained judgment against *B*, and levied the execution upon the property so attached. *A* brought his bill in equity against *D*, making *B* and *C* parties, to enforce his lien and foreclose their respective claims. The superior court decided, that *A* had no lien for the erection of the fences, but established the residue of his claim. On a motion in error, it was held, 1. that the certificate described the premises on which a lien was claimed, with the requisite certainty ; 2. that it was not necessary to specify in the certificate the amount expended upon the dwelling-house and the barn, separately ; 3. that the certificate was not void, because it included in the amount specified therein the expense of the fences ; 4. that consequently, *A* had a valid lien for the amount expended on the dwelling-house and barn ; 5. that this lien embraced not only the buildings and the land covered by them, but also the land about the buildings, used with them, and necessary, or reasonably convenient, for their use, which, in this case, was the entire lot.

This was a bill in chancery, brought by *Charles D. Curtiss* against *Frederick H. Stow, Robert R. Fairchild* and the *Bank of Charleston,* to perfect the lien of the plaintiff on a certain dwelling-house and barn in the town of *Stratford,* which he had erected, and on which, with the land whereon they stood, he claimed a lien, by virtue of the act of 1836, entitled "An act securing to mechanics a lien upon land and buildings," and the act of 1838, in addition thereto.

The plaintiff is a mechanic, using the trade and occupation of house carpenter. On the 6th of *September* 1842, he contracted with *Stow,* to build for him a dwelling-house and barn, and furnish the materials, on a certain parcel of land belonging to him, situated in *Stratford,* containing one acre, according to the terms specified in a writing of that date, under their hands and seals, for the sum of 2500 dollars. Before the

dwelling-house was erected and finished, *Stow* conveyed the premises to *Fairchild*, who thereupon agreed with the plaintiff to assume the contract between him and *Stow*, and to pay to the plaintiff the balance then due on the work performed, which was 1700 dollars, when the buildings should be completed. On the 1st of *March* 1843, *Fairchild* executed, under his hand and seal, another contract with the plaintiff, by which he agreed to pay the plaintiff the sum of 200 dollars for additional labour and materials, *viz.* front and garden fences, and window blinds, to be put upon the premises; payment to be made, when the labour should be completed. Under these contracts between the plaintiff and *Stow*, and the plaintiff and *Fairchild*, the plaintiff performed the labour and furnished the materials, as therein stipulated to be performed and furnished. At the completion thereof, on the 10th of *June* 1843, the plaintiff ceased to labour thereon, or to furnish materials therefor, and thereupon delivered the key of the dwelling-house to *Fairchild*. On the 19th of *July* 1843, and within sixty days after said building was finished, the plaintiff lodged with the town-clerk of *Stratford*, a notice or certificate in writing, in the following words: " Be it known, that I, *Charles D. Curtiss*, of *Stratford*, for the consideration of materials furnished, and labour expended upon the buildings and premises hereinafter described, do claim and hold a lien upon said buildings and premises, under the statute law of this state, entitled ' An act securing to mechanics a lien upon land and buildings,' and an act in addition thereto, for the sum of 1900 dollars, as the balance and amount justly due me, the said *Charles D. Curtiss*, for labour furnished and expended as aforesaid, under contracts made, the first with *Frederick H. Stow*, of said *Stratford*, dated the 6th day of *September* 1842, for the sum of 2500 dollars; the second and last, made with *Robert R. Fairchild*, dated *March* 1st, 1843, for the additional sum of 200 dollars. Said premises are situated near the centre of said town of *Stratford*, and consist of an acre of land, more or less, bounded, &c. Dated *Stratford*, 19th *July*, 1843. *Charles D. Curtiss*." [L. S.] This certificate was duly signed and sworn to, by the plaintiff, and lodged with the town-clerk of the town of *Stratford*, to be recorded in the records of that town, with the deeds of land,

*Fairfield,*
July, 1847.

The Bank of
Charleston
*v.*
Curtiss.

on said 19th of *July* 1843 ; and was duly recorded in such records.

On the 18th of *April* 1843, the *Bank of Charleston,* a corporation duly instituted and organized under a law of the state of *South-Carolina,* attached the premises, by virtue of sundry writs of attachment in favour of said bank against *Frederick H. Stow,* for certain debts therein described, returnable to the county court of the county of *Fairfield,* on the second *Tuesday* of *August* 1843. These suits were afterwards appealed to the superior court for that county, and by legal continuances, came to the term of said court in *October* 1844, when judgments were duly rendered in said suits, for the sum of about 3000 dollars ; and executions, issued on such judgments, were, on the 6th of *January* 1845, levied upon the premises, which were appraised and set off to said bank. The value of the premises, at that time, did not exceed the sum of 2500 dollars. There is now justly due from *Fairchild* to the plaintiff, on said contracts, the sum of 2356 dollars, 10 cents.

*Stow* and *Fairchild* made default of appearance in this suit ; but the *Bank of Charleston* appeared and answered to the bill, and the parties were fully heard thereon. The court disallowed so much of the plaintiff's claim as accrued to him for making the fences on the premises, amounting to the sum of 100 dollars, but allowed the residue of his claim, *viz.* for building the dwelling-house and barn on the premises, and for the materials furnished and used in the construction of them. The court therefore decreed, that unless the *Bank of Charleston* should, on or before the fourth *Tuesday* of *March* 1847, or unless said *Stow* should, on or before the *Tuesday* next following the last-mentioned day, or unless said *Fairchild* should, on or before the *Tuesday* next following the last-mentioned day, pay, or cause to be paid, to the plaintiff, the sum of 2356 dollars, 10 cents, with the interest which should accrue thereon from the 27th of *October* 1846, to the time such payment should be made, together with the costs of this application, they, and each of them, should, after the time limited to them respectively as aforesaid, be forever barred and foreclosed of all right to redeem the premises from said lien ; and that, upon the failure of the defendants to pay said sums, as aforesaid, to the plaintiff, and redeem the premises within the

time so limited to them respectively, they should, on or before the     day of     1847, execute to the plaintiff, in due form of law, a deed of the premises, conveying to the plaintiff all their right, title and interest in the premises, in fee-simple, and deliver such deed to the plaintiff, together with the possession of the premises : and in case the defendants, or either of them, should refuse or neglect to convey the premises to the plaintiff, within the time so limited, then all the right, title and interest in the premises should become vested in the plaintiff, in fee-simple.

To revise this decision, the *Bank of Charleston* thereupon filed a motion in error, and brought the record before this court.

*Dutton,* (with whom was *Noble,*) for the plaintiff in error, contended, 1. That the decree was erroneous in establishing a valid lien on " the premises," *viz.* the acre of land and the buildings thereon. The subject of the lien is the " dwelling-house or other buildings," " with the land on which the same may stand." The object of the statute was, to enable a mechanic to retain possession of the materials and labour furnished by him, and nothing more. He is to hold the building, and the land on which it stands, with such easements as are necessary for their use. The statute was originally applicable only to structures in *cities*, and of course, was limited to the ground occupied by the building ; and the extension of the statute to *towns*, cannot alter its construction. If this construction be not adopted, the rule is uncertain and indefinite : the lien may attach upon the garden, or orchard, or a small farm ; and if upon a small farm, why not upon a large one ? If a mechanic builds a house and barn upon a parcel of ground, he may have a lien on each, including the ground it stands on ; but the lien on one will not of course extend to the other.

2. That the certificate lodged in the town-clerk's office, was void. The statute requires, that the certificate should describe " the premises, and the amount claimed as a lien thereon." *Sect.* 2. This certificate does neither. In the first place, the premises may be the dwelling-house, or the barn, or the labour expended on the lot—either or all,—leaving the whole indefinite. Secondly, the debt is not sufficiently

described.    The certificate does not give reasonable notice of the amount claimed as a lien on the premises ; nor would it lead an inquirer to any definite result.    A claim for a lien on two buildings, or for work on two, is wholly indefinite, and good for neither.    A certificate is necessary for two purposes ; first, to inform the public on what he claims the lien ; and secondly, the extent of that lien.    If he claims a lien on two buildings, he must specify how much *on each ;* he cannot have a lien on both, for all of his claim.

*Booth,* (with whom was *Loomis,*) for the defendant in error, after remarking, that in view of the objects to be attained, the construction of the act of 1836 ought to be liberal, because a literal construction would defeat the object entirely, as a lien merely upon the house and the land covered by it, would be utterly worthless, contended, 1. That the statute contemplated a lien upon the building, and so much of the land immediately adjoining, as is necessary for the convenient enjoyment of the building.    In this case, nothing appears upon the record to show that more is taken than is necessary for the convenient enjoyment of the house.

2. That the barn was correctly included.    The house and barn were stipulated to be built, by one and the same contract. The plaintiff could not recover for building the house, without showing an entire performance.    His demand is one entire claim, and is not divisible.    Only one certificate could be filed, because the statute requires the *amount* to be stated. There is no rule, and none can be laid down, for apportioning different parts of one entire sum upon the different buildings. The plaintiff could not place the whole upon either.    He must, therefore, embrace both in his certificate, or lose his claim ; and thus the object of the statute would be defeated.

3. That the amount of the plaintiff's demand is properly described by him, in his certificate.    The statute does not require the debt itself to be described, but the *amount.*    It is not denied that the plaintiff has done this amount, except as to 100 dollars for fences, disallowed by the superior court.    But as that sum was honestly included, and no claim is made that it is fraudulent, the claim is not vitiated as to the residue. *Sanford* v. *Wheeler*, 13 *Conn. R.* 165.    *North* v. *Belden,*

*Id.* 376. *Ayres* v. *Husted*, 15 *Conn. R.* 504. *Frink* v. *Branch*, 16 *Conn. R.* 260.

All that the statute requires, is, a description of the premises and the amount of the debt. The defendants treat this proceeding as if it was the transfer of title, requiring the same strictness as the levy of an execution. This view of the question is erroneous; because, in the first place, the statute does not require it. Secondly, the title is not only not transferred, but even a lien is not acquired, by the certificate. That is given by the 1st section of the statute, and continues sixty days after the building is completed. By the certificate, the lien is only *preserved*.

CHURCH, Ch. J. The plaintiff is a mechanic, a builder, who, by this bill in equity, attempts to enforce a lien, which he claims to have, upon the buildings and land described in his bill, according to the provisions of our statute of 1836, entitled "An Act securing to mechanics a lien on land and buildings,"—and extended, by an additional act of 1838.

This lien, as he claims, accrued, by reason of work and labour performed and materials furnished by him, in the erection of a dwelling-house, barn, &c. upon a building-lot of about one acre of ground, situated in the village of *Stratford*, as he has described it.

The work was done, and the materials were furnished, by the plaintiff, chiefly under a contract made originally by him with *F. H. Stow*, then the owner of the lot, for building a dwelling-house, barn, &c., for the sum of twenty-five hundred dollars, to be paid to him by *Stow*. Afterwards, and after the work was in part completed, *Stow* sold the lot to *Robert R. Fairchild*, one of these defendants, and assigned to him his interest in the contract; and *Fairchild*, at the same time, assumed *Stow's* obligations to the plaintiff. Some time after *Fairchild* had thus become solely interested, he made a further contract with the plaintiff, of small amount, for the erection of fences, and placing window-blinds upon the dwelling-house.

The superior court rejected the plaintiff's claim for the fences, as not constituting any part of his lien, but established his claim for the remainder.

The question now is, how far can the plaintiff enforce his

lien upon the property in dispute, against the *Bank of Charles-ton,* which claims the property as creditor of *Stow,* and by virtue of the levy of executions against him ?

The plaintiff insists, that his lien is coëxtensive with the building-lot, and is not confined to the buildings themselves and the land on which they stand. It is certain, if the lien does not embrace the entire lot, that we have no criterion by which to determine its extent, from any thing appearing upon this record, unless we restrict it to the buildings and the land covered by them. To construe the statute thus literally and strictly, would render the lien useless. There can be no value in a building, to which there is no access, or which cannot be used conveniently. Indeed, we understand the defendants very properly to admit, that the lien, if valid for any purpose, not only embraces the structures and the land upon which they stand, but also such easements as are necessary for their use. But what are these ? Distributors on the spot might perhaps determine this, and set them out ; but we cannot. We think, the doctrine recognized by this court, in the case of *Frink* v. *Branch,* 16 *Conn. R.* 261. is properly applicable to the construction of this statute ; and that not only the buildings and land on which they stand, are covered by this lien ; but also, the building-lot, or land about the buildings, used with them, and necessary, or reasonably convenient, for their use. In cities, to which this lien was originally confined, the building-lot attached to the house, was unquestionably intended, under this statute, to be taken and included by the builder's lien. In country villages, such lots are generally larger, but equally necessary for the reasonable enjoyment of the various structures erected upon them. We cannot see, that the land claimed here is greater in quantity, than is necessary and convenient for the reasonable use of these buildings. We think, therefore, that the objection to this claim of the plaintiff cannot be sustained.

2. The *Bank of Charleston* objects to the certificate which the plaintiff lodged with the town-clerk of *Stratford,* as being void against the creditors of *Stow.* This certificate was intended, by the statute, to give reasonable notice to purchasers and creditors, of the existence and extent of the lien. We think it has effected this purpose, in the present case. The premises are described, with as much, if not with more, cer-

tainty, than is common in deeds of conveyance; and the amount claimed by the plaintiff, and sworn to, is exactly expressed. The statute requires no more. And it matters not, that this precise sum was not found due by the court, by reason of its rejection of so much of the claim as embraced the charges of the plaintiff for erecting the fences. The sum sworn to, was what the plaintiff honestly supposed to be due; and there was no fraud in his certificate, either actual or legal. And it gave to all persons interested, reasonable means and opportunity of ascertaining the true condition of the plaintiff's demand.

The chief ground of objection to the certificate, however, is, that it does not specify the amount expended and remaining due upon each building separately; and that the expenditures upon the dwelling-house are not a lien upon the barn, &c. In such a case as this, there could have been no practical use in such a specification. Indeed, it would have been nearly impracticable to have kept up a separation of accounts for each. The contract for the erection of these buildings, was in effect only one; especially, after its assumption by *Fairchild.* It was an agreement, by one party, to furnish labour and materials sufficient for the construction of these buildings, and to be paid therefor, by the other, an entire and fixed sum. The parties, under such a contract, could no more have contemplated a division or separation in the cost of these several structures, than in the cost of the separate apartments of the dwelling-house, designated on the plan of the architect.

We are of opinion, therefore, that the objections of the plaintiff in error to the decree of the superior court, have not been sustained; and that there is nothing erroneous in that decree.

In this opinion the other judges concurred, except WAITE, J., who gave no opinion, not having been present when the case was argued.

**Judgment affirmed.**