Goodman v. White.

Aaron C. Goodman vs. John H. White and another.

A prior mortgagee acquires no right by a foreclosure of the mortgagor to redeem the property from a subsequent incumbrancer.

A subsequent mortgagee receives by his mortgage a transfer of the mortgagor's equity of redemption, and acquires thereby a distinct and independent right of redemption which can not be affected by a proceeding to which he is not a party.

A foreclosure by a prior mortgagee of the mortgagor's interest alone, does not invest the party foreclosing with all the rights of the mortgagor, nor pass the title to the land; it merely extinguishes the mortgagor's personal right of redemption, and the mortgagor may, after such foreclosure, redeem a subsequent mortgagee and avail himself of such mortgagee's equity of redemption.

The rules of equity with regard to mortgages are applicable to the liens of mechanics upon land and buildings under our statute.

Petition in equity to redeem premises incumbered by a mechanics' lien.

On the 17th day of August, 1853, Ralph Callender, being the owner of certain premises situated in Hartford, on which he was erecting a dwelling house, conveyed the same to one Willis A. Pierce. During the year 1853, the following persons had acquired mechanics' liens on the premises, for materials furnished and labor done in the erection of said house; viz., Henry Burgess, one commencing July 16th; E. Taylor & Co., one commencing July 18th; Horatio Root, one commencing August 1st; William Terry, one commencing September 26th; and Lot Sheldon, one commencing October 12th. Horatio Root, at the January Term 1854, of the superior court for Hartford county, obtained a decree of foreclosure against Willis A. Pierce and William Terry only, giving Pierce until October 11th, and Terry until October 14th, 1854, for redemption. Pierce neglected to redeem, and on the 13th of October, 1854, the petitioner purchased the interests of Root and Terry in the premises and still held the same. The Hartford Savings Bank and Building Association in November 1854, obtained judgment against said Pierce for about $600, took out execution therefor and levied the same on the aforesaid premises. In February 1855, they purchased, for a valuable consideration, of Henry

Burgess, E. Taylor & Co. and Lot Sheldon, their respective claims, took assignments thereof, and of their respective liens on the premises, and afterwards conveyed the premises to John H. White, one of the respondents, who was still in possession of the same. The petitioner prayed for a conveyance to him of the land by the said White, upon payment of the amount secured by the original liens of the said Burgess, Taylor & Co. and Sheldon. The Hartford Savings Bank and Building Association was also made a party respondent.

Upon these facts the superior court reserved the case for the advice of this court.

*Goodman*, for the petitioner.

1. The interest of the respondent White, is that acquired by him under the assignments of the liens of Burgess, Taylor & Co., and Sheldon. The petitioner has the interest and title of Horatio Root. The latter had by his certificate a lien, and by his foreclosure obtained a full title to the property. His claim became paid, and all the rights of Pierce by the foreclosure vested in him. Among these rights, the right of redemption as against the intervening incumbrancers was acquired. *Bassett* v. *Mason*, 18 Conn., 131, 136. 2 Swift's Sys., 440. 2 Swift's Dig., 198. *Derby Bank* v. *Landon*, 3 Conn., 62. *Swift* v. *Edson*, 5 id., 531. If the intervening incumbrancers had the equity of redemption, then they would have had not only that but also the right to sue and collect their claims from Pierce or Callender personally. The latter would still be liable to pay all the debts secured by the liens on the property and yet have lost the right to redeem the property, which certainly can not be equitable. *Baldwin* v. *Norton*, 2 Conn., 161, 164. *Hunt* v. *Stiles*, 10 N. Hamp.; 446.

If these incumbrancers had not the equity of redemption before, they could not have acquired it by the decree of foreclosure obtained by Root, for they were not parties nor privy to that decree and could not be affected by it.

2. These later incumbrancers acquired no title to the land by virtue of their liens, but only security for their claims, and

when those were paid the liens would be discharged.  The statute creating the lien in such cases gives no title to the land, but the merest lien as security for the debt.  Rev. Stat., tit. 30, sec. 4.

3.  The assignments of these liens conveyed to the respondents only the liens ; the mere right secured by the certificates of lien.  They did not convey the equity of redemption, if it was vested in the parties holding the liens.  The respondents therefore have no right to redeem the property out of our hands.

*Hubbard,* for the respondents.

A prior incumbrancer can not by a foreclosure of the owner of the equity of redemption acquire the right to redeem a subsequent incumbrancer who was not made a party to the decree of foreclosure.

1.  A decree against a mortgagor alone in favor of a prior incumbrancer can not affect the rights of an intervening incumbrancer.  *Beers* v. *Broome,* 4 Conn., 247.  *Smith* v. *Chapman,* id., 344.

2.  A foreclosure does not pass a title like a deed, but merely extinguishes the equity of redemption of the party foreclosed.

3.  A subsequent incumbrancer holds nothing but an equity of redemption.  His interest is carved out of the equity of the mortgagor, is an hypothecation of it.  The foreclosure of the mortgagor by a prior incumbrancer merely debars him personally, and leaves the subsequent incumbrancer the sole representative of the equity.  Suppose the decree of foreclosure had embraced the subsequent incumbrancer, and the time limited for the mortgagor to redeem had expired, but that for the subsequent incumbrancer had not, could the latter have lost his right to redeem ?  Very clearly not; and this is decisive of the question before the court.

4.  The right claimed by us seems to have been admitted as settled law in *Swift* v. *Edson,* 5 Conn., 531.

Storrs, C. J.   It being conceded on the argument, that

the incumbrances on the property in question by virtue of the building liens created the same rights as if they had been secured by mortgage, the question is presented for our decision, whether a mortgagee, having foreclosed the mortgagor without pursuing a like remedy against a subsequent mortgagee, has the right of redeeming the interest of the latter in the mortgaged premises, upon paying the debt secured by the subsequent mortgage.

The practice which, although not sanctioned by English precedent, has been tolerated in this state, whereby a foreclosure of a mortgagor or of a subsequent incumbrancer has been suffered, without bringing before the court all parties concerned in the equity of redemption, gives rise to some embarrassment in deciding a case like the present, growing out of its novelty. Whether a practice so objectionable ought to survive a direct test of its legal merits we have no occasion to decide. In determining in what condition its application has left the mortgaged estate, we must rely on a critical examination of first principles.

The argument in favor of the right claimed is simple and need not be aided by illustration. As it did not exist before the foreclosure of the mortgagor, it must be that, if it exists at all, it was by that proceeding acquired ; that by depriving the mortgagor of his equity of redemption the first mortgagee succeeded legitimately to all his equitable rights, including the right to extinguish by redemption the second mortgagee's interest in the mortgaged estate.

Before assenting to this conclusion, it is well to recur to the condition of the three parties at the time when the bill of foreclosure was exhibited.

After the delivery of the first mortgage deed the legal title to the land conveyed was in the first mortgagee. An equitable right, an equity of redemption, was all that remained in the former owner, and all that he could mortgage to a third person. It is true that a second mortgage purports to be a conveyance of the land itself, and as between the parties to the instrument it is such ; and whenever the estate of the first mortgagee is divested the second mortgage will

operate fully as a conveyance of the land. But so long as the first mortgage is outstanding, the second mortgagee receives only a transfer or assignment of the mortgagor's equity or equitable right. This right however, is, in equity, certainly capable of being transferred; and its transfer if regularly perfected will charge the first mortgagee with an obligation to the party receiving the transfer as direct, distinct, and independent, as that before due to the mortgagor. The right acquired by such an assignment the first mortgagee must respect, as much as a debtor, duly notified of the assignment of his creditor's claim against him, must respect the rights of the assignee. The first mortgagee can not invest himself with the interest of the second mortgagee by any proceeding against the mortgagor, any more than the debtor, in the case just instanced, could defeat the claim of the assignee of the debt, by a collusive payment to the original creditor. As to the second mortgagee, a foreclosure of the mortgagor by the prior incumbrancer would be *res inter alios acta.* The relation before subsisting between the first and second mortgagees would still subsist, and the rights growing out of that relation would be altogether unaffected.

One of these rights, which inhered in the latter from the very moment of the delivery of the second mortgage deed, was that of redeeming the first mortgagee; which the second mortgagee has ever since possessed, without any reference whatever to the existence of a similar right in favor of the mortgagor. A foreclosure, therefore, of the latter would not extinguish this privilege, and it follows that it is still in full force and virtue in the present case, although a decree of foreclosure has passed against the mortgagor.

We are thus brought to this position. If the first mortgagee has the right to redeem the second as claimed at the bar, we have the anomalous spectacle of two parties, each having the same privilege outstanding against the other at the same time. It would seem that there must be some fallacy in the argument which involves so strange a conclusion.

In fact, the whole difficulty arises from a *petitio principii.* It is contended that when the first mortgagee deprives the

mortgagor of his right by a foreclosure, he takes it to himself—acquires it.   If it be true that such is the effect of a foreclosure, the petitioner's position is impregnable.   But if the latter proceeding is not tantamount to a redemption or purchase of the mortgagor's right, the argument of the petitioner is groundless.

We familiarly say, that a foreclosure invests the petitioner with the interest of the party foreclosed; but we thus describe a practical effect rather than state what is absolutely true.   As between the two parties to the bill, such a proceeding passes the mortgagor's title as effectually as a judicial sale, because it extinguishes all the title he had.   All, however, that is formally done is the extinguishment of the right, the interposition of a perpetual legal bar against the party foreclosed.   Such is the plain, literal meaning of the terms used.   The decree only professes to close a door, which equity before had kept open; not to confer a right or pass a title.   The foreclosing creditor succeeds therefore to nothing, acquires no estate, and purchases no right.

But if we look beyond etymology, we shall see that equitable principles will not give to a foreclosure the enlarged effect demanded for it.   The first mortgagee in a case like the present, does nothing which should raise an equity in his favor.   He pays nothing and sacrifices nothing in behalf of the mortgagor, so as to make himself in the eye of justice the substitute of the mortgagor.   The doctrine of substitution only applies where one has performed the obligations of another and entitled himself thereby to the rights and advantages incident to the discharge of such obligations.   No such merit can attach to the mere extinguishment of another's equitable right by the strong arm of the law.   There is a rational distinction between the effect of such an act and that of the clear acquisition of the mortgagor's interest in the mortgaged estate by virtue of a judicial sale, or an express grant from the mortgagor himself.

The impropriety of extending the equitable consequences of a decree of foreclosure beyond the natural effect of the words used, will appear still more clearly, when it is remem-

bered, that not only are the relations of the second mortgagee to the first, and also to the mortgagor, forcibly changed by a proceeding to which he is not a party, and of which he may have no notice, but the mortgagor is also deprived of his rights as against the second mortgagee, to the same extent as if the second mortgagee had himself foreclosed him. In other words, a petition of foreclosure brought by a first mortgagee will, on the principles now contended for, invest him with all the rights of the second mortgagee against the mortgagor. The right to redeem the second mortgagee may be a valuable privilege to the mortgagor even after the foreclosure by the first incumbrancer; it may enable him to reclaim his estate; and it would seem as he should only be deprived of this right by a proceeding instituted by the voluntary act of the second mortgagee, or by his own; at least not by the act of the first mortgagee, professing in his bill to assert no other privilege than that conferred by the first mortgage.

On the whole we can not sustain the present bill, inasmuch as first principles of equity and justice seem to present insuperable obstacles to the doctrines urged in its support.

No adjudged case, which has come under our observation, covers the whole ground of this decision. In *Mix* v. *Cowles*, (20 Conn., 427,) where the court treated the first mortgagee as standing on the same ground as if he had foreclosed the mortgagor, and in *Thompson* v. *Chandler*, (7 Greenl., 377,) where the first mortgagee had by a purchase acquired the mortgagor's right of redemption, it was concluded that the second mortgagee still retained an unimpaired right to redeem as against the first; a right which, as it would seem, must be extinguished only by a foreclosure, not by redemption; a right which imports no more and no less than that its possessor may, by the payment of the amount of the incumbrancer's claim upon the property charged, cancel the claim, and that the incumbrancer upon the payment of such amount is bound to relinquish his interest in the property in behalf of the redeeming party. If he is bound to relinquish on such terms, it would seem absurd to say that he is at the

same time authorized to keep his interest on terms more favorable to himself.

In the case last cited from Maine reports, the decision went so far as to recognize in the second mortgagee a right to obtain by redemption the interest of the first mortgagee vested by his mortgage, and also upon refunding to the first mortgagee the money advanced by him to purchase the mortgagor's estate, to receive a transfer of the latter also.

We advise that the bill be dismissed.

In this opinion the other judges concurred.

Bill to be dismissed.