TURNEY SOULE ET AL. *vs.* ANDREW BORELLI ET ALS.

First Judicial District, Hartford, January Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Findings of facts made by the trial court must stand, unless the record discloses no evidence upon which the conclusions reached could reasonably have been based.
An "original contractor," within the meaning of General Statutes, § 4137, relating to mechanics' liens, is one whose contract of employment imposes a direct obligation upon the landowner

Soule *v.* Borelli.

resulting from his participation therein, either personally or through an authorized intermediary.

The defendant contended that the original contractor was not the plaintiffs, but their foreman. *Held* that upon the facts found this claim could not be sustained.

General Statutes, § 4135, expressly declares that a builder's or mechanic's lien shall take precedence of any other incumbrance originating after the commencement of the services or the furnishing of any materials. *Held* that the precedence thus accorded to such lien existed without interruption from the beginning to the close of the undertaking, regardless of the state of the account between the landowner and the builder at any stage of the work; and therefore that the lien did not yield its priority to a mortgage which was placed upon the property during the progress of the work, notwithstanding the proceeds of the mortgage loan were, to the knowledge of the builder, used in making payments to him, and, together with previous credits, more than balanced his charges up to the date of the mortgage.

An overstatement of the amount due, in the certificate of a builder's lien, whether resulting from inadvertence and clerical error, or from an honest belief in the justness of the overcharges, or partly from each, will not vitiate the lien, in the absence of any intent to deceive and of any actual injury to any one therefrom.

The legal title to the interest created by virtue of a lien placed on real estate in favor of a firm of contractors, vests in the individual members of the firm, although the debt secured by the lien is personal property whose legal as well as equitable title is in the copartnership as such. Accordingly, if the partnership is dissolved while such lien is pending, and the debt and its security are assigned to and retained by the retiring partners, the legal and equitable title merge in them and a suit to foreclose the lien is properly brought in their names as individuals.

Argued January 9th—decided March 3d, 1908.

ACTION to foreclose a mechanic's lien, brought to and tried by the Superior Court in Litchfield County, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendants. *No error.*

For many years prior to January 1st, 1904, the plaintiffs, Turney Soule and George H. Lines, as sole copartners, under the name of T. Soule & Co., hereinafter referred to as Soule & Co., were engaged in business in New Milford as builders and dealers in lumber, hardware and builders' material. D. E. Soule, the brother of Turney Soule, had

for some years prior to April, 1904, been employed by the copartnership as foreman of construction. In that capacity he was accustomed to hire and have charge of the men, and to select and order the materials required. Immediately after the fire which on May 2d, 1902, destroyed nearly all the business portion of New Milford, including a hotel owned, as was the land on which it stood, by Mrs. Borelli, the wife of the defendant Andrew Borelli, it was determined by Soule & Co. that they would thereafter take construction work only upon commission, and the agreement with D. E. Soule was so modified that thereafter his compensation was $3 per day of nine hours, and one half of the commission received by the firm upon carpenters employed. He was at no time a member of the partnership, and had no other connection with the construction of the building hereafter referred to than as foreman of Soule & Co. It was not within the scope of his duties to make any agreement on behalf of his employer in regard to raising money for payments on its bill, or to make statements in relation thereto, and he had no authority to do so and he made no statement or agreement in relation thereto as its agent or representative.

A few days after the fire Mrs. Borelli, accompanied by her husband, to whom she was married in 1879, drove into the lumber-yard of Soule & Co. and there had an interview with Mr. Lines, the junior partner. They asked Mr. Lines if his firm could promise them help to rebuild the destroyed hotel. Lines told her that, subject to other buildings that had to come in ahead, they would do so. Mrs. Borelli asked upon what terms and how. Lines replied that they had decided to take no jobs except upon a ten per cent. commission basis, that is, they would furnish the labor and materials at cost, and add thereto ten per cent. commission. Mrs. Borelli thereupon accepted the proposition of Lines to do the work upon these terms, telling him to go ahead as soon as possible.

On June 10th, 1902, the firm, pursuant to this agreement and direction, began to furnish labor and materials in

the erection of the building and continued uninterruptedly to do so until it was completed on January 5th, 1903. The last charge upon the account is under date of January 10th, 1903, when the time-cards of the men employed were turned in and the men paid. D. E. Soule acted throughout as the superintendent of the work, hired and had charge of the carpenters employed, and selected all materials out of the stock of Soule & Co., in so far as it was in stock, and when not in stock procured it elsewhere in the name of the firm. The account for the job was kept upon the books of the firm and covered about eight ledger pages. The balance struck upon this account as it stood upon the books after the work was completed, showed an indebtedness to Soule & Co. of $2,612.82, and on March 4th, 1903, a lien was filed upon the property for said sum in favor of the plaintiffs, described as copartners under the name and style of T. Soule & Co., their heirs and assigns.

The account for whose balance, struck as aforesaid, a lien was filed, contained a few small items inadvertently there entered which were properly chargeable to Mr. Borelli upon some other account than for the building in question. It also included three items which had been twice charged by mistake, a few clerical errors, and certain items which the court found were overcharges. Concerning the latter class of entries the court finds that they were made under a fair claim of right, in good faith, and in the belief that they were justified under the agreement. Concerning all of the improper entries and errors, the finding is that they resulted from claims honestly made, mistakes or clerical errors, and that none of them were made intentionally for the purpose of overcharging or deceiving or defrauding the Borellis or the mortgagees.

August 11th, 1902, Mr. and Mrs. Borelli mortgaged the premises in question to J. LeRoy Buck, conservator, to secure a note of $5,000. Buck having died, the defendant Adeline Buck succeeded him in the execution of said trust.

October 10th, 1902, the Borellis gave a second mortgage of said premises to the defendant Bennitt, to secure a note

for the like sum of $5,000. This note and mortgage were given for the purpose of raising money to pay bills in connection with the construction of said building, including that of Soule & Co. Of the sum thus raised, $3,500 was paid to Soule & Co. by check sent by the hand of D. E. Soule, who told one of the partners the source from which the Borellis had obtained it. The firm had nothing to do with securing the loan, and had no other knowledge of the transaction than that conveyed to them by D. E. Soule as aforesaid. Bennitt knew that the building was being erected and that Soule & Co. were erecting it. He made no inquiries of the firm in relation to the matter.

This payment of $3,500, made on October 11th, 1902, when entered upon Soule & Co.'s books, made the credit charges in the Borelli account exceed the debit charges then actually made upon the books, although no balance was then, or at any time before the completion of the work, struck upon them. At this time considerable material had been contracted for by Soule & Co. which was soon after paid for, furnished and charged. The material and labor actually furnished after November 6th, 1902, together with the commission on the same, amounted to more than the sum found due upon the completion of the work.

The erection of the building increased the value of Mrs. Borelli's lot very largely, and was beneficial to her in her business there carried on by her.

No notice of an intention to claim a lien was ever given by Soule & Co. to either of the Borellis, or to either of the other defendants.

Mrs. Borelli died September 8th, 1904, possessed of the premises in suit, and her husband was duly appointed administrator of her estate. The account in question was presented to said administrator and no notice of disallowance has been given.

December 31st, 1903, the firm of T. Soule & Co. was dissolved ; Turney Soule conveying to his son all his interest in the partnership property, excepting only the Borelli account and lien. Concerning this asset of the firm

it was orally agreed between the two partners, the plaintiffs, that they would retain and hold jointly the account and lien. This they have continued to do and they are now the bona fide holders thereof. No written assignment of the claim or lien was made.

Turney Soule and George H. Lines are the plaintiffs, and Andrew Borelli in his individual capacity and as administrator of the estate of his wife, and the two mortgagees, are made defendants.

The defendants asked the court to find that the contract for the construction of the building was made with D. E. Soule in his individual capacity, and that he thereupon contracted with Soule & Co., and that D. E. Soule made certain agreements and statements bearing upon the validity or priority of any lien which bore materially upon the plaintiffs' right to recover, and duly excepted to the finding as made in respect to these and other particulars.

The court rendered a judgment of foreclosure, in which the amount of the debt was fixed at $2,235.24, the same being the amount which the court found to be justly due upon the account, to wit: $1,786.05, together with interest thereon from January 10th, 1903.

*Leonard J. Nickerson*, for the appellants (defendants).

*Donald T. Warner*, for the appellees (plaintiffs).

PRENTICE, J. The defendants except to certain of the facts found by the court. Among them are several which lie at the very foundation of the plaintiffs' case. Our examination of the evidence fails to disclose that any material fact, whether of major or minor importance, has been found without evidence from which the conclusion reached could reasonably have been drawn. The finding must therefore stand. *Nogga* v. *Savings Bank*, 79 Conn. 425, 426, 65 Atl. 129.

With the facts established as found, certain of the questions of law attempted to be raised are either entirely elimi-

nated or greatly simplified. Among these are all those addressed to the validity of the lien sought to be foreclosed, or to its right of precedence over the two mortgages placed upon the premises after the commencement of the rendition of the services and the furnishing of the materials covered by it.

T. Soule & Co.—as the party who in negotiation with Mrs. Borelli, the property owner, stated to her and her husband, who accompanied her, the terms upon which it was willing to undertake the work desired by her to be done, and then and there received from her directions to proceed therewith upon the terms proposed, and thereupon, pursuant to such directions, did so proceed and did render the services and furnish the materials desired and so directed to be rendered and furnished—was, within the full meaning and intent of the statute, an original contractor, and one who rendered the services and furnished the materials for which the lien is claimed under an agreement with the landowner. General Statutes, §§ 4135, 4137. One is an original contractor whose contract of employment imposes a direct obligation upon the property owner resulting from the latter's participation therein, either personally or through an authorized intermediary.

The lien, by the express provision of the statute, took precedence of any incumbrance originating after the contractor began to furnish materials. General Statutes, § 4135. This date was June 10th, 1902. The first of the mortgages sought to be foreclosed was not placed upon the property until August 11th, 1902. The lien is, therefore, entitled to priority over them. The fact that labor and material was furnished after the last mortgage was given, the value of which exceeded the amount found due upon the completion of the work, or that the payments to the contractor may have exceeded the charges upon its books at or subsequent to the date of either mortgage, or that the proceeds of a mortgage loan may have been used in making payments to the contractor which, when credited upon its books, exceeded in the aggregate the charges

then thereon, or that the contractor knew that the money
paid to him, with the result indicated, was the proceeds of
such loan, would not, one or all of them, if established,
suffice to postpone the lien to the mortgage.   The statute
is too explicit to admit of any such construction.   The
contract was a single, indivisible one, comprehending all
that was done, and its execution was unbroken in its con-
tinuity.   By force of the statute there was embodied in it
the power to charge the property, as of the time its execu-
tion was begun, for all the materials furnished and serv-
ices rendered by virtue of it.

The overstatement in the lien of the amount due, as the
court has found it, did not invalidate the lien.   The state-
ment in the lien was made in good faith, with no intention
to deceive or defraud, and no one has in fact been deceived
or misled to his injury thereby.   In so far as the over-
statement resulted from the inclusion in the account of the
small items properly chargeable to the husband, it was due
to inadvertence.   In so far as it resulted from mistakes or
clerical errors in the contractor's ledger account, they were
not intentional.   In so far as what the court regarded as
excessive charges swelled the book balance for which the
lien was filed, these charges were made under a fair claim
of right, in good faith, and under the belief that they were
justified under the terms of the contract.   We have repeat-
edly held that such a state of facts was not sufficient to
avoid a lien.   *Bank of Charleston* v. *Curtiss*, 18 Conn. 342,
349; *Hopkins* v. *Forrester*, 39 id. 351, 354; *Marston* v.
*Kenyon*, 44 id. 349, 356; *Kiel* v. *Carll*, 51 id. 440, 441.

There remains to consider the right of these plaintiffs,
who were the sole members of the firm of T. Soule & Co.,
now dissolved, to maintain this action to enforce the lien
by foreclosure in their individual names.   The debt which
the lien secured was personal estate, whose legal as well as
equitable title vested in the partnership of T. Soule & Co.
The interest created in the real estate of Mrs. Borelli by
virtue of the lien placed thereon, was, on the other hand,
an interest in land, and as such the legal title thereto did

not vest in the partnership but in its individual members. *Goodman* v. *White*, 26 Conn. 317 ; *Beardsley* v. *Beecher*, 47 id. 408, 415 ; *Sigourney* v. *Munn*, 7 id. 11, 19. The only interest which the partnership had in the lien was one recognized and enforced in equity. *Sigourney* v. *Munn*, 7 Conn. 11, 19 ; *Frink* v. *Branch*, 16 Conn. 260, 269. This familiar principle was recognized when the present lien was filed in the name of the plaintiffs, who claimed the lien in their individual capacities, although they described themselves as being partners in the firm. When the partnership was dissolved by the plaintiff Soule transferring all his interests therein to his son—except that this debt and lien was reserved out of the transfer, and the two partners of the old firm agreed that they would retain and jointly hold them as between themselves—the debt became aparted from the partnership assets and transferred to the partners, who thereupon became the owners and holders thereof. No formal or written assignment was necessary to accomplish this distribution of the partnership assets. With this transfer of the debt to the persons in whom the legal title to the lien was vested, the facts out of which a court of chancery would create an equitable title therein in the partnership ceased to exist, the equitable title became extinguished or passed over with the ownership of the debt to the two partners, in whom the title to the debt and the legal title to the lien had vested, and the title and interest, both legal and equitable, in and to both debt and lien thereupon became merged in the plaintiffs. A perfected mechanic's lien passes, as an incident, with the assignment of the demand for which it stands as security. *McDonald* v. *Kelly*, 14 R. I. 335, 338 ; *Wiley* v. *Connelly*, 179 Mass. 360, 60 N. E. 784 ; *Rauer* v. *Fay*, 110 Cal. 361, 367, 42 Pac. 902 ; *Trueblood* v. *Shellhouse*, 19 Ind. App. 91, 95, 49 N. E. 47 ; *Jones* v. *Hurst*, 67 Mo. 568; 27 Cyc. 258. The situation presented is precisely analogous to that which would have arisen had the Borellis given a mortgage of their property to secure the debt. *Goodman* v. *White*, 26 Conn. 317 ; *Beardsley* v. *Beecher*, 47 id. 408, 415. The

legal title to the premises would have vested in the individual members of the firm. The partnership, as the owner of the debt, would have had the equitable title. *Huntington* v. *Smith*, 4 Conn. 235, 237 ; *Chamberlain* v. *Connecticut Central R. Co.*, 54 id. 472, 484, 9 Atl. 244. A transfer of the debt would have carried with it the beneficial interest in the security. *Smith* v. *Stevens*, 49 Conn. 181, 187 ; *Chamberlain* v. *Connecticut Central R. Co.*, 54 id. 472, 484, 9 Atl. 244 ; *Farrell* v. *Lewis*, 56 Conn. 280, 283, 14 Atl. 931. If the transferee was also the holder of the legal title to the land under the mortgage, he would then have the full legal and equitable title to both the debt and security merged in him. *Lockwood* v. *Sturdevant*, 6 Conn. 373, 390. The action to enforce the lien by foreclosure was therefore rightfully brought in the plaintiffs' names.

There is no error.

In this opinion the other judges concurred.