SCHWARTZ & COMPANY, INC., Appellant, v. AIMWELL COMPANY, INC., and Another, Respondents.

First Department, March 23, 1923.

Liens — mechanic's liens — action on bond given by sublessee to lessee to pay for repairs to be made by sublessee — lien was canceled on assignment of bond to lienor — cancellation of lien did not affect liability of surety — property is located in Connecticut — lienor did not willfully and intentionally misstate that work was complete — omission of minor detail of work, subsequently performed, did not make lien invalid — lien filed conformed to Connecticut statute — not necessary to state in lien that lessee consented to work — objection that consent of owner of fee was not obtained cannot be considered where not raised on trial or in briefs on appeal — consent of lessee shown by sublease is sufficient to make lien effective against leasehold interest.

The liability of a surety in a bond executed by a sublessee of the lessee of property located in Connecticut to the effect that the sublessee would pay for all repairs to be made by it is not affected by the cancellation of a mechanic's lien filed against the property in consideration of an assignment of the bond to the lienor by the lessee; the assignment is effective to give to the lienor all the rights of the lessee before the assignment and before the cancellation of the lien.

The lien is not invalid on the ground that the lienor willfully and intentionally misstated that the work was finished when the lien was filed, where the only basis for such contention is that at the time the lien was filed a subcontractor had omitted to put a chain upon the roof above the coping, which omission was overlooked by the sublessee and was corrected immediately when the attention of the contractor was called to it.

The lien was not invalid on the ground that it did not mention that the lessee had consented to the work and that it did not mention the sublessee, since the lien filed stated all the particulars required by the Connecticut statute, and further stated that the repairs were consented to by the owner of the fee.

The court will not consider an objection raised in consultation but not presented by counsel at the trial or in briefs on appeal, that the consent under the Con-

necticut statute must be by the owner of the fee of the land and that his interest alone can be affected by the lien.

The consent of the lessee to the making of the repairs, which consent was contained in the sublease itself, was sufficient to make the lien effective against the leasehold interest, and it was not necessary that that consent should be such as to raise an implied contract on the part of the lessee to pay for the work and materials.

Appeal by the plaintiff, Schwartz & Company, Inc., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 28th day of March, 1922, upon the decision of the court rendered after a trial before the court, a jury having been waived, dismissing the complaint upon the merits.

*Harrington Putnam* [*Abraham H. Sarasohn* with him on the brief], for the appellant.

*Otto A. Samuels*, for the respondent National Surety Company.

*Horace G. Marks*, for the respondent Aimwell Company, Inc.

Smith, J.:

D. A. Schulte, Inc., was lessee for ten years of some real property in Bridgeport, Conn. It leased to the Aimwell Company, Inc., the said premises. The Aimwell Company made a contract with plaintiff for certain repairs on the property. This contract and these repairs were made with the consent of D. A. Schulte, Inc., as expressed in the lease itself, who exacted a bond from the Aimwell Company to pay for all the material used and work put upon the premises in the making of these repairs. This action is upon that bond. Both defendants are defending. These repairs were not paid for by the Aimwell Company, and upon December 18, 1917, this plaintiff filed a mechanic's lien against the property. This lien was canceled in consideration of an assignment by the Schulte Company to the plaintiff of this bond, and this action is brought by the plaintiff as such assignee.

If this lien was a valid lien, the fact that it was canceled upon assignment of the bond to plaintiff cannot destroy the liability of the surety. The condition of the bond was the payment of the bills incurred by the Aimwell Company. The proof of the filing of the lien was only necessary to show harm to the Schulte Company. If that harm existed, liability attached and the cancellation of the liens upon assignment of the rights of the Schulte Company upon the bond did not satisfy that liability. That assignment is effective to give to plaintiff all the rights of the Schulte Company before the assignment and before the cancellation of the liens in consideration of such assignment.

The complaint as first framed recited the making of the bond, its assignment, and that the contract price was not paid. Upon demurrer the Court of Appeals held that the complaint was not good by reason of its failure to show that the Schulte Company was injured by such failure to pay. (227 N. Y. 186, 187.) Judge McLaughlin in writing the opinion says: " If such claims were not paid, then the persons performing work or furnishing materials might file mechanics' liens against the real estate and thereby obligate the landlord to pay for the same. It was to protect him against this contingency that the bond was given." It did not appear in that complaint that any such lien had been filed. The complaint was then amended to allege the filing of the lien of December 18, 1917, and the Connecticut statute, under which the lien was filed. (See Conn. Gen. Stat. 1918, § 5217 *et seq.;* Conn. Gen. Stat. 1902, § 4135 *et seq.*) The trial court has dismissed the complaint, however, on the ground that the lien filed was not a valid lien. This is the only question presented upon this appeal.

The lien was found to be invalid by the trial court upon three grounds: *First,* that plaintiff, as lienor, had willfully and intentionally misstated that the work was finished when the lien was filed in December, 1917. It appears that the contractor had omitted to put a railing upon the roof above the coping to give further protection against persons falling off the roof of the building over the coping. When the attention of the contractor was called to the matter, he notified the person in charge of the iron work, who immediately put the railing upon the roof. Thereafter the plaintiff filed two other liens, on September 27 and 28, 1918 (upon which, however, no claim is here made), which claims stated that the work was completed at a later date than that specified in the first lien filed. Before the first lien was filed, however, the Aimwell Company itself overlooked the omission of the railing and actually gave its note for the balance due on the contract. The finding of a fraudulent intent to deceive was based solely upon the facts as thus stated. In my judgment this finding was against the weight of evidence. It is held in *Ringle* v. *Wallis Iron Works* (149 N. Y. 439) that the lien is good where some work remains to be done if the contract has been substantially performed. Liens have frequently been sustained where the contractor was required, after the filing of the lien, to do some slight work which had been inadvertently omitted at the time that the lien was filed. This Lien Law should be liberally construed as a remedial statute. (*Gates & Co.* v. *National Fair & Exposition Association,* 225 N. Y. 142.) In the *Ringle Case* (*supra*) Judge O'Brien says: " This court has not yet been committed, so far

as I have been able to ascertain, to the doctrine that a party, by inserting statements of fact in the notice of lien which are shown to be untrue, thereby forfeits the right to a lien and renders the notice void or ineffectual to create a lien. Cases have been cited from the Supreme Court and other courts in support of this proposition. We will not now stop to inquire whether this qualification has been properly engrafted upon the statute, and if so, to what limitations such a rule should be subjected. It is quite clear that the cases refer to statements in the notice that are not only untrue but wilfully and intentionally false in some important or material respect."

In *Kiel* v. *Carll* (51 Conn. 440) it is said: "The first error assigned is that there was a discrepancy between the amount alleged to be due in the certificate of lien, and the amount found due by the court. The certificate states the amount due as $3,500; the amount found due by the court was $733.41. The statute requires that the amount due shall be stated in the certificate as nearly as the same can be ascertained. But this court has repeatedly held that an honest mistake either of law or of fact, by reason of which the amount due is overstated, in the absence of fraud, or of intention to deceive, and where no one has in fact been deceived or misled to his injury, will not vitiate the lien. (*Bank of Charleston* v. *Curtiss*, 18 Conn. 349; *Hopkins* v. *Forrester*, 39 id. 351; *Marston* v. *Kenyon*, 44 id. 349.)"

In *American Mortgage Co.* v. *Butler* (36 Misc. Rep. 253) the late Mr. Justice McADAM states the law as follows: "It cannot be inferred from the mere fact that the referee decided that Cook claimed too much that the lienor forfeited his equitable claim upon the property, nor is there anything in the evidence warranting that conclusion. In *Ringle* v. *Wallis Iron Works*, 149 N. Y. 439, it is intimated that the statements that make a notice of lien ineffectual must be not only untrue, but ' wilfully and intentionally ' false in some important or material respect. So, in *Aeschlimann* v. *Presbyterian Hospital*, 165 N. Y. 296, the court held that where in such case it appears that the plaintiffs intentionally and by pretense of a fictitious and fabricated demand enormously exaggerated their claim, with intent to defraud, no recovery could be had on the lien. The court carefully observed the obvious distinction between honest mistakes of fact as to value, and wilful and intentional exaggeration fraudulently made. In this respect the rule is similar to that applicable to false swearing in proofs of loss on insurance policies, which by the conditions thereof vitiates the contract, but, to have this effect, the swearing. ' must be intentionally false, whether by a fraudulent overvaluation of the goods destroyed, or a statement

of items which really have no existence, or by an undervaluation of what is saved, or in other particulars.' " (See, also, 18 R. C. L. 876.)

It appears that the contract for this iron work, which included the putting in of this railing, was a subcontract, and, without further evidence of an intentional and willful misstatement that the work had been completed in November, 1917, it cannot be held that the lien was defeated thereby. The omitted work was of so little importance that it escaped the notice of the Aimwell Company, which, as stated, gave its note for the last remaining installment upon the contract prior to the putting up of this iron railing. If, as under the cases cited, a misstatement of an amount due upon a contract cannot be deemed to be of itself so far intentional and fraudulent as to defeat the lien, it would seem clear that a misstatement as to the fact that the building was completed would come within the same rule, and unless intentionally and willfully made, and with intent to deceive, of which there is no proof, the court cannot condemn this lien upon that ground.

Another reason assigned by the court for holding the lien invalid was that the lien itself did not mention that the Schulte Company had consented, nor did it mention the Aimwell Company. The statute of Connecticut is quoted, which shows what the certificate of lien must contain. That statute simply requires the lien to be filed within sixty days after the work should be completed, and that the premises should be described, the amount claimed as a lien thereon, and the date of the commencement of the performance of services and furnishing of materials, stating that the claim is justly due, as near as can be ascertained; and this statement is required to be sworn to by the claimant. The statute of New York (Lien Law, § 9, as amd. by Laws of 1916, chap. 507) required other matters to be stated in the certificate or notice of lien and provides (§ 10, as amd. by Laws of 1916, chap. 507) a different time for filing. The lien filed stated all of these particulars required by the Connecticut statute (Conn. Gen. Stat. 1918, § 5218; Conn. Gen. Stat. 1902, § 4136), and it further stated that the making of the repairs was consented to by the owner of the fee of the land, one Elbridge G. Wheeler. It did not state that the claim was made simply against Wheeler, nor was it necessary, under the Connecticut statute, to state who was in fact the owner of the land or that any consent was given by any one, or to name any party against whom the claim was made. If the claim is filed *against the land,* proof may be made upon the trial to bind any party who has an interest in the land without the statement of the name of such party in the notice of the lien.

The question has been raised, not upon the briefs of counsel, but in consultation, that under the Connecticut statute the consent must be by the owner of the fee of the land, and that his interest alone can be affected by the lien. In the first place, this question was not raised on the trial. The lease by Wheeler to the Schulte Company was offered in evidence by the plaintiff and was objected to by the defendant, and it was stated by appellant's counsel that that lease itself provides for the repairs or construction for which this lien was filed. If that question had been raised at the trial, proof might then have been made. It was not raised at the trial so as to bring the matter to the attention of the court and counsel. It is not raised in the respondent's brief in this court, and was not raised or suggested by the learned Trial Term justice, who, in writing his opinion, states: " His [D. A. Schulte, Inc.] leasehold interest was, however, likely to be affected by a filing of a mechanic's lien on the premises, if such lien were valid and enforceable to the extent of the provable sum of the claim." We are of opinion that this objection comes too late; that the assent of Wheeler, who was the owner of the fee of the land, was not obtained. Nor do we think that it was necessary to obtain that consent in order to make this lien effective as against the leasehold interest of D. A. Schulte, Inc.

In 18 Ruling Case Law (at p. 886) the text in part reads: " In some jurisdictions there are statutory provisions extending mechanics' liens to leasehold estates, but, *regardless of such provisions*, it seems settled that the word ' owner ' in a statute giving a mechanic's lien on the interest of an owner is not limited in its meaning to an owner of the fee, but also includes the owner of a leasehold estate." I find no cases holding otherwise, and there are several cases holding this rule. (*Poole* v. *Fellows*, 25 R. I. 64; *Forbes* v. *Mosquito Fleet Yacht Club*, 175 Mass. 432; *Daniel & Co.* v. *Weaver*, 5 Lea [Tenn.], 393; *Hathaway* v. *Davis*, 32 Kans. 693; *Moore* v. *Vaughn*, 42 Neb. 696.)

In this case there is nothing to show that Wheeler consented, but that the Schulte Company consented is shown by the provisions of the lease. In *Gates & Co.* v. *National Fair & Exposition Association* (*supra*), Judge Chase, in writing for the court, says: " Full knowledge and general acquiescence in the improvement of the real property considered in connection with the covenants and agreements contained in the lease are some evidence of consent on the part of the owner within the meaning of the statute." (Citing authorities.)

The lien has further been held invalid on the ground that there was no such consent by the Schulte Company as would authorize

the filing of the lien as against the interest of such company. The contention of the respondent here and the holding of the trial court seem to be to the effect that the consent of the owner must be such a consent as to make the owner personally liable upon the debt. This ruling is not entirely without support, as the case of *Avery* v. *Smith* (96 Conn. 223) as well as the case of *Peck* v. *Brush* (90 *id.* 651) give color to the contention that the consent must be such as would authorize an inference of an agreement to pay on the part of the consenting owner. In *Peck* v. *Brush* (*supra*, 654), in speaking of the word "consent," it is said: "But clearly under section 4135 it is not necessary that the materials shall be furnished under an express contract, but it is enough if they are furnished with the consent of the owner of the land so that there is an implied contract by him to pay for them."

The Connecticut statute in this respect is like our own. (See N. Y. Lien Law, § 3.) The materials must have been furnished or the work done under contract with *or* by consent of the owner in order to authorize the filing of the lien. This provision is in the alternative, and to hold that such a consent is necessary as would raise an implied contract to pay, would, to my mind, be entirely subversive of the alternative provision of the statute. In New York State the statute has been construed to authorize the lien where there is no contract expressed or implied to assume a personal obligation to pay for the materials. (*Gates & Co.* v. *National Fair & Exposition Association,* 225 N. Y. 142; *Pearce* v. *Kenney,* 152 App. Div. 638; *Kerwin* v. *Post,* 120 *id.* 179.) It is true that the consent must be such as to imply an assent that the contractor may look to the interest of the owner in the land through his mechanic's lien for his pay. That was all that was necessary to be held in *Avery* v. *Smith* (*supra*). There was no such consent by the Young Women's Christian Association in that case as to indicate an assent to the filing of a mechanic's lien. In the *Peck* case the materials were furnished upon request of the owner. It may be also that, if there be a specific agreement that the owner of the land is not in any event to be liable for materials furnished or work done in making repairs, the permission to go ahead and make the repairs is not such a consent as would authorize the filing of a mechanic's lien as against the owner's interest. But, assuming for the argument that these cases go to the full extent of holding that such consent must be such as to imply an obligation of the consenting owner to pay the claims, it is difficult to see how there could be any stronger consent than is indicated in the lease from the Schulte corporation to the Aimwell corporation. The repairs are to be made. They are to be subject to the approval of the Schulte corporation. A bond is to be given

by the Aimwell corporation for the payment of all materials purchased for such repairs and for all work done thereupon. This requirement of a bond is a clear recognition of liability on the part of the Schulte corporation for these repairs and for the cost thereof, so that the consent given under the circumstances in this case could not have been stronger, and could hardly have been given under such circumstances as would more strongly imply a liability to pay than would be found in any consent by an owner to the making of repairs where the liability was not assumed in express terms. Under the construction of these Connecticut cases, therefore, which may be deemed to be an interpretation of their own statute, the consent given by the Schulte corporation was sufficient to authorize the filing of the lien.

No question is made by respondent on this appeal that this claim was not within the provisions of the bond, because of the extra work ordered to be done, so that the question does not arise as to whether a recovery could be had upon the bond for such extra work.

It follows that the judgment of the Trial Term should be reversed, with costs, on law and fact, and judgment should be entered for the plaintiff for the relief demanded in the complaint, with costs.

CLARKE, P. J., DOWLING and PAGE, JJ., concur.

Judgment reversed, with costs, and judgment directed for relief demanded in the complaint, with costs. Settle order on notice.